## Linda A. Cuneo *v.* Fredric D. Cuneo
## (4472)

Borden, Daly and O'Connell, Js.

Argued October 6—decision released December 8, 1987

*Louis I. Parley,* for the appellant (defendant).

*Robert G. Zanesky,* for the appellee (plaintiff).

Borden, J. The defendant appeals challenging the financial and visitation orders entered incident to the judgment dissolving his marriage to the plaintiff. The defendant claims that the trial court erred (1) in its determination regarding the relative fault of the parties for the marital breakdown, (2) in its orders regarding the allocation of the assets and liabilities of the parties, and regarding alimony and support, and (3) in an evidentiary ruling regarding visitation of the defendant with the parties' minor children. We find error in part.

The trial court, *Hon. William L. Tierney,* state trial referee, found the following facts: The parties were married for twenty-two years. The basic cause of the marital breakdown was the physical and mental abuse of the plaintiff by the defendant, but the plaintiff contributed in a lesser degree to the breakdown by her erratic and violent treatment of the defendant. The parties have four sons, ages twenty, eighteen, fifteen and twelve. The two older sons live part-time with the defendant and receive financial assistance from him for their education. The two younger sons live with the plaintiff.

The court further found that the plaintiff, age forty-five, is a college graduate, teaches high school, and is in good health. She worked at the beginning of the marriage to help the defendant through law school, and except for a short period of time has taught classes for the past six years. The court further found that the plaintiff earns $15,000 per year, and has no assets except for a one-half interest in the marital residence in Wilton. The residence is valued at $160,000 to $180,000, and is subject to a mortgage of $28,000. That house was purchased with the proceeds of the sale of the parties' previous residence, which in turn was purchased through a mortgage, contributions from both parties and a loan from the defendant's mother. The court also found that the plaintiff will never have the earning capacity of the defendant, and needs assistance for the future.

The court also found that the defendant, age forty-six, is in good health, and is a practicing attorney working for the National Broadcasting Company (NBC) at an annual salary of $65,000.[1] He has worked there for

---

[1] The defendant correctly points out, and the plaintiff does not claim otherwise, that the court was incorrect in describing the defendant as a "practicing attorney." Although he has a law degree, and practiced law briefly

seventeen years. In addition to his one-half interest in the marital residence, he has a savings plan with NBC in the amount of $6400, and a retirement plan in the amount of $9000.[2] He has debts, payable to members of his family, of $46,000.

The court awarded the custody of the two minor children to the plaintiff, subject to reasonable visitation by the defendant. The court also ordered the defendant's one-half interest in the house conveyed to the plaintiff, subject to the existing mortgage, and ordered the plaintiff to hold the defendant harmless with respect to the mortgage. The court ordered the defendant to pay the plaintiff unallocated alimony and support in the amount of $400 per week, which amount was to be reduced to $300 in September, 1987, and to $200 in December, 1991, and which is to terminate in September, 1992. The termination date is not subject to modification.

I

The defendant first claims that, with respect to the court's determination regarding the relative fault of the parties for the marital breakdown, the court erred in two respects: (1) the determination is unsupported by the evidence; and (2) it contradicts the court's determination, made during the trial, that both parties were "strictly at fault" for the breakdown. This claim is without merit.

upon graduation from law school, it was undisputed that his employment at NBC is not as a lawyer. This factual error does not, however, affect the disposition of this case.

[2] The defendant also correctly points out that the court's finding of $9000 as the value of his retirement fund is at odds with the only evidence on that issue. That evidence was the defendant's exhibit and testimony that the value was approximately $6600. Since we find error regarding the procedure which preceded the court's determination of the division of the assets and liabilities of the parties, on remand the court should consider the current, correct value of the defendant's retirement fund.

The first aspect of the defendant's claim is no more than an attempt to have this court reweigh the evidence and find facts. This we will not do. *Voloshin* v. *Voloshin,* 12 Conn. App. 626, 631, 533 A.2d 573 (1987). We have fully reviewed the entire record of this case. The court's determination is supported by the evidence, and cannot be disturbed.

The second aspect of the defendant's claim is more troublesome, but does not involve error. The trial began on October 9, 1984, when both the defendant and the plaintiff testified. Near the end of that day's testimony, while the defendant was on the stand for the second time, there was a colloquy among the court and counsel regarding, inter alia, the causes of the marital breakdown.[3] When the interchange between the two counsel became heated, the court interjected: "All right. There's no question about it. I've heard this ad nauseam now, and I've come to the conclusion that they're both strictly at fault in this breakdown. Neither one side carries the burden of it at all. If you want to just keep throwing more mud in here, you can and I suppose I'm forced to listen."

The defendant claims that the court's remark, that "they're both strictly at fault in this breakdown," constituted a factual determination which the court could not alter absent subsequent evidence on that issue in the case. Therefore, the defendant argues, the court's finding in its memorandum of decision, namely, that the defendant's conduct was the basic cause of the breakdown, was erroneous. We disagree.

---

[3] The defendant's counsel indicated that he intended to call one of the older sons to testify "as to what went on in the household, and things like that." The plaintiff's counsel objected that the children should not be brought into the case for that purpose and told the defendant's counsel, "Don't start bringing witnesses in here like that." The defendant's counsel replied, "Don't yell at me like that. You know quite well that your client is much the difficulty that you might want to make my client to be, and I will not take to that."

The court should refrain from arriving at its factual findings until it has heard and duly considered all the evidence; *Giamattei* v. *DiCerbo,* 135 Conn. 159, 161–62, 62 A.2d 519 (1948); and it should also refrain from making any comments indicating that it has decided any factual issues until it has heard and considered that evidence. Id. That does not mean, however, that where a court has made such a premature comment, it is bound thereby. It is fundamental to the notion of a judicial factual hearing that the factual determinations arrived at after hearing all the evidence and after due deliberation on that evidence constitute the court's finding of facts. Id.; see *Grayson* v. *Grayson,* 4 Conn. App. 275, 494 A.2d 576 (1985), appeal dismissed, 202 Conn. 221, 520 A.2d 225 (1987).

The court's remark in this case, obviously made in the midst of a heated exchange between counsel and during the heightened emotion of a contested dissolution case, was inappropriate. It did not, however, constitute a finding of fact which the court could not alter after due deliberation on the evidence. The remark does not undermine the court's finding of fact regarding the causes of the marital breakdown, expressed in its memorandum of decision after its deliberation on the evidence.

II

The defendant next claims that the court erred in its orders regarding the unallocated alimony and support, and regarding the division of the parties' assets and liabilities. The defendant presents several bases for this claim. Only two of these bases require any discussion; the others simply attempt to induce us to substitute our discretion for that of the trial court. The defendant argues that the court's financial orders are flawed because (1) they were based on findings of fact which are clearly erroneous, and (2) they were based on finan-

cial affidavits which were out of date, and the court improperly refused to consider current affidavits. We agree with the second of these contentions.

With respect to the first contention, the defendant argues that the court's finding that he earned $65,000 per year is flawed because it ignores his testimony that he had additional income of $1350 per month, or $16,200 per year. We are at a loss, however, to see how the defendant can complain of such an error, since its rectification could only be to his financial detriment, and the plaintiff does not claim error on appeal regarding that finding. The defendant's second contention, namely, that the court's financial orders were based on improper financial affidavits, does have merit. We conclude, however, that its merit extends only to the court's order regarding the division of the parties' assets and liabilities. This facet of the defendant's claim must be viewed in its procedural context.

The first two days of the trial of the case were October 9 and 10, 1984, when the parties introduced evidence regarding the causes of the breakdown of the marriage, and their respective financial situations. Both parties introduced their then current financial affidavits, and testified regarding them. At the end of the hearing on October 10, 1984, the court granted the defendant's request, made in accordance with an earlier suggestion by the court during the trial, to refer the question of the defendant's visitation with the two minor children to the family relations office for a recommendation. The court suggested that the parties file their formal demands within thirty days, but specifically reserved decision on the entire case until it received the family relations report and held a hearing thereon. The report was not completed until April 19, 1985, more than six months later. On April 30, 1985, the defendant appeared in court in response to a telephone call that he appear for a hearing. The plain-

tiff and her counsel did not appear, and the plaintiff's counsel later represented to the defendant's counsel that he had not received a similar telephone call. The case was rescheduled for May 21, 1985, but it could not proceed on that date because the family relations officer was unavailable. The case was again rescheduled for May 30, 1985.

On that date, the defendant and his counsel appeared, but neither the plaintiff nor her counsel appeared.[4] The defendant's counsel indicated to the referee that he wished to present limited testimony and that he had told the plaintiff's counsel the previous day that he intended to go forward, and he requested that the matter proceed. The referee denied the defendant's request and continued the case until August 1, 1985, which was the referee's next available date.

Both parties appeared on August 1, 1985. The defendant sought to file a new financial affidavit, and to testify with respect to it. He claimed that although his new affidavit would show that he was earning more money than his previous affidavit and testimony disclosed, there had been other "changes in the economic picture." In response to the plaintiff's objection that both sides had completed the evidence regarding the parties' finances, the defendant requested that the court "reopen the evidence with regard to the finances." The court refused to accept any new affidavits, and the defendant marked his new affidavit as an exhibit for identification. That affidavit disclosed, inter alia, a value of the parties' marital home of $220,000.

---

[4] Another attorney was present who stated on behalf of the plaintiff's counsel that the plaintiff's counsel had no objection to the family relations officer's report, and that the plaintiff's counsel requested two weeks to file his formal demands. This attorney did not, however, file an appearance for the plaintiff and was not prepared to represent the plaintiff in any hearing with regard to the report.

We have recently reiterated the requirement that a ruling on a postjudgment request for attorney's fees be based on the parties' current financial positions, where there was timely and adequate notice of such a claim to the court. See *Bielen* v. *Bielen,* 12 Conn. App. 513, 515, 531 A.2d 941 (1987). That requirement is simply part of the broader principle that the financial awards in a marital dissolution case should be based on the parties' current financial circumstances to the extent reasonably possible. Practice Book § 463. The same reasoning applies in this case.

We recognize that in the ordinary marital dissolution case there may be some time lag between the presentation of the evidence and the decision of the trial court; see, e.g., General Statutes § 51-183b (requiring that a decision in a trial to the court be rendered within four months of the close of the hearing); and that the decision to reopen any aspect of the case regarding which the parties have completed their evidence is committed to the trial court's discretion. See *Elliott* v. *South Isle Food Corporation,* 6 Conn. App. 373, 379–80, 506 A.2d 147 (1986). The facts of this case, however, lead us to conclude that the trial court abused its discretion in refusing to consider the defendant's new affidavit and his testimony with respect to it.

First, nearly ten months had elapsed since the presentation of the parties' financial affidavits and testimony on October 9 and October 10, 1984. Where the trial court was alerted to the claim that the economic picture had changed, the court's laudable desire to bring the proceedings to an end should not have foreclosed at least a limited inquiry into the parties' then current finances.

Second, none of the delay was attributable to the defendant, and some of it was attributable to the plaintiff. The two month delay between May 30, 1985, and

August 1, 1985, was solely the result of the failure of the plaintiff and her counsel to appear for the hearing scheduled for May 30, 1985.

Third, the affidavit which the court refused to consider discloses that the value of the principal asset of the parties, namely, their marital residence, had increased since the time of the parties' initial affidavits by $40,000 to $60,000. This is a sizable difference, particularly where, as here, the other assets of the parties were valued at a total of $15,400.

We do not suggest that, had the court considered the defendant's second affidavit and his testimony with respect to it, the court would have been compelled to find the home to be worth $220,000. Nor do we suggest that, even if the court had found the value of the home to be $220,000, it would have been compelled to make a different allocation of the parties' assets and liabilities, or that the court on remand will be compelled to do so. Whether the court on remand will make the same or different orders regarding the division of the assets and liabilities of the parties will be a matter for the discretion of the court based on the financial situation of the parties at the time of the new hearing.

The defendant argues that this error of the court requires a remand with respect to all of the financial orders, because the orders regarding alimony and support are integrally connected to the orders regarding the allocation of the parties' assets and liabilities. On the facts of this case, we disagree.

It is true that often "[t]he rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." *Ehrenkranz* v. *Ehrenkranz,* 2 Conn. App. 416, 424, 479 A.2d 826 (1984). This is not such a case. The finances of the parties were not complicated. Furthermore, it is clear from the court's memorandum of

decision that the focus of the unallocated alimony and support order was on the short term needs of the plaintiff while the minor children were still in her charge, whereas the focus of the allocation of assets and liabilities was on the plaintiff's need for some financial security in the long term. Under these circumstances, we conclude that the error extends only to the orders regarding the assets and the liabilities of the parties.

The defendant's final claim of error involves an evidentiary ruling of the court. It is clear that this ruling was related only to the issue of visitation, despite the defendant's suggestion that it also was related to the financial orders. We have fully reviewed this claim, and find it to be without merit.

There is error in part, the judgment is set aside and the case is remanded for a new hearing limited to the issue of the allocation of the assets and liabilities of the parties.

In this opinion the other judges concurred.