PRENTICE K. SMITH, JR. *v.*
SHEILAH T. SMITH
(SC 15978)

Callahan, C. J., and Borden, Berdon, Katz and Palmer, Js.

---

Argued March 25—officially released June 15, 1999

*Richard L. Albrecht*, for the appellant-appellee (defendant).

*Thomas M. Cassone*, with whom, on the brief, were *Lawrence M. Lapine, Robert S. Bello* and *Christopher T. Coburn*, for the appellee-appellant (plaintiff).

*Opinion*

KATZ, J. The defendant, Sheilah T. Smith, appeals and the plaintiff, Prentice K. Smith, Jr., cross appeals[1] from the judgment of the trial court dissolving the parties' marriage, ordering child support, ordering dual alimony pursuant to General Statutes § 46b-82,[2] and

[1] As part of the dissolution judgment, the trial court also issued custody and support orders. These orders, however, are not the subject of the present appeal.

[2] General Statutes § 46b-82 provides: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The

ordering a property distribution pursuant to General Statutes § 46b-81.[3] The issues to be decided on appeal are whether: (1) the trial court, pursuant to § 46b-81, properly retained continuing jurisdiction over the present case in order to have the authority to divide the plaintiff's interest in any family trust (Smith family trust), if ever he is found to hold such an interest; (2) the trial court properly awarded dual alimony pursuant to § 46b-82;[4] (3) the terms and conditions of the alimony

order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

[3] General Statutes § 46b-81 (a) provides in relevant part: "At the time of entering a decree . . . dissolving a marriage . . . pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect."

[4] Although the defendant claims that this matter is an issue of the trial court's jurisdiction, it actually is a question of statutory authority. "Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999). The trial court's statutory jurisdiction to order alimony is well settled. General Statutes § 46b-1 ("[m]atters within the jurisdiction of the Superior Court deemed to be family relations matters shall be matters affecting or involving . . . (4) alimony"); *Amodio* v. *Amodio*, supra, 729 (trial court has general subject matter jurisdiction over alimony appurtenant to family relations actions); see also General Statutes § 46b-82. In contrast, it is a matter of first impression whether the trial court

ordered by the trial court constitute an abuse of discretion; and (4) the trial court abused its discretion in awarding the plaintiff $75,000 of the defendant's $275,000 settlement award that she had received from a former employer.[5] We affirm in part and reverse in part the judgment of the trial court.

The trial court's findings may be summarized as follows. The parties were married on October 20, 1984. That same year they jointly bought a house on Grahampton Lane in Greenwich. The marriage was the plaintiff's second and the defendant's first. The parties have two children: a daughter, born July 25, 1986; and a son, born December 12, 1987.[6] At the time of the dissolution, the plaintiff was forty-seven years old and the defendant was forty-six years old. They are both in good health. The plaintiff holds a bachelor of arts degree from the University of Denver. The defendant, in addition to having attended two years of graduate school at Columbia University, holds a bachelor of arts degree from Northwestern University.

The plaintiff has held numerous positions in the field of finance during the last twenty years. At the time of the parties' marriage, he was selling securities in New York City. In 1986, he left that position to become a partner in an investment firm. Two years later, in the wake of the 1987 stock market crash, he was discharged

has authority to order dual alimony pursuant to § 46b-82. Because of the importance of the matter, however, we will treat the issue as if the defendant had labeled the issue as one of statutory authority and not subject matter jurisdiction.

[5] The defendant appealed and the plaintiff cross appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). Concurrent to her appeal, the defendant filed a motion for articulation. The trial court granted the motion and published a memorandum of decision as its written articulation (articulation).

[6] The plaintiff also has one minor child from his first marriage for whom he is obliged to pay child support.

from the firm. Between 1983 and 1988, the defendant worked at Willow Development (Willow), a real estate development business. She, too, was laid off as a result of the post-October, 1987 economic downturn. While both were unemployed, the parties sold their Grahampton Lane house, realizing a net profit of $800,000, which they divided evenly. The trial court found that this distribution equally divided their then marital estate.

In the spring of 1990, after being unemployed for more than one year, the plaintiff moved with his family to Philadelphia to start his own financial company. Within two years, however, the company had failed and the defendant and the two children moved back to Greenwich. The plaintiff soon rejoined them in Connecticut. Upon returning to Greenwich with the two children, the defendant rented a home pursuant to a two year lease. In 1994, she bought land on Fairfield Road in Greenwich and began to build a house on it. The defendant and the two children eventually moved into their new house, where they were still residing at the time of trial. Although upon his return to Connecticut the plaintiff lived with his wife and children in the leased house, he has never resided in the house on Fairfield Road.

In 1992, the defendant began working as a mortgage broker at Columbia Equities. Within a short period of time she moved from Columbia Equities to People's Bank, where she became a mortgage broker working on a commission basis. The defendant's income has increased greatly since she first began as a broker. Her 1997 W-2 forms indicated gross earnings of more than $270,000. In contrast, since returning to Connecticut in 1992, the plaintiff has worked sporadically at numerous financial jobs. Consequently, his income has varied dramatically. His most recent positions were located in Eastern Europe.

The trial court concluded that the plaintiff's financial actions and inactions, along with his failure to recognize that the defendant had taken on the yoke of the family's financial burdens since 1988, caused the irretrievable breakdown of the marriage. The court further found that the plaintiff had not been forthcoming concerning his financial affairs and earning capacity during the pendente lite proceedings. Nevertheless, the court determined that the plaintiff had an annual earning capacity of $100,000. The trial court further found that the plaintiff's financial affidavit showed a zero net worth, while the defendant's affidavit reflected assets worth $781,000, and liabilities of $48,250. The court concluded that the defendant had acquired all of her assets through her own efforts and investments, with the exception of $275,000 that she received in settlement of a lawsuit against Willow.[7]

The trial court awarded custody of the minor children to the defendant, and granted reasonable visitation rights to the plaintiff. Additionally, the court ordered the plaintiff to pay the defendant $240 per week in child support, and $1 per year in alimony until September 30, 2007, or until the defendant's remarriage, whichever occurs first. The court also ordered the defendant to pay the plaintiff $400 per month in alimony until December 31, 2005.

The court further ordered the defendant to pay the plaintiff $75,000,[8] which the court found to be the plaintiff's equitable share of the $275,000 settlement, on an after tax basis. Having determined that the $275,000 was a marital asset as of 1990, when the parties equally

[7] In 1990, the defendant had commenced an employment action against Willow for breach of her severance agreement. As a result, she obtained a $275,000 settlement that was paid to her during 1995 and 1996. The trial court found that the plaintiff had made no effort to "acquire, preserve or appreciate" the employment claim.

[8] The $75,000 is to be paid over ten years and will bear no interest.

divided their assets, the court reasoned that the plaintiff had acquired the right to an equitable share of approximately four fifths of this sum because the defendant's claim had arisen from her employment from 1984 through 1988, and the parties had been married for four of those five years.[9] Lastly, the court retained continuing jurisdiction until September 30, 2007, over any interest the plaintiff may be determined to have in any Smith family trust, so that the court would be able to divide that asset as property should such an interest ever materialize.[10]

In their appeals, both parties raise the following issues: (1) whether the trial court, pursuant to § 46b-81,[11] properly retained continuing jurisdiction over the present case in order to have the authority to divide the plaintiff's interest in any Smith family trust if ever he is found to hold such an interest; and (2) if the court did not properly retain jurisdiction, whether the court's improper order requires a new trial. The defendant raises three additional issues: (1) whether the trial court had statutory authority to order dual alimony pursuant to § 46b-82;[12] (2) whether the terms and conditions of the alimony orders constitute an abuse of discretion by the trial court; and (3) whether the trial court abused its discretion in awarding the plaintiff $75,000 of the defendant's $275,000 settlement award from Willow.

I

Courts generally resolve issues concerning subject matter jurisdiction before considering the merits of the

[9] See part III of this opinion.

[10] We note that pretrial interrogatories, exhibits admitted at trial, and oral testimony during trial contain contradictory information regarding the existence of such an interest. The defendant never has made any claims to such a trust, and specifically disclaimed any interest at oral argument in this court. Instead, she introduced evidence regarding the existence of a Smith family trust solely in order to show that the plaintiff had not been forthright in his financial affidavits concerning his interest in such a trust.

[11] See footnote 3 of this opinion for the text of § 46b-81.

[12] See footnote 2 of this opinion for the text of § 46b-82.

parties' claims. See, e.g., *W.* v. *W.*, 248 Conn. 487, 493, 728 A.2d 1076 (1999). In the present case, we must determine whether the trial court properly retained continuing jurisdiction in order to have the authority to divide the plaintiff's interest in any Smith family trust if ever he is found to hold such an interest. Furthermore, if we find that the court did not have jurisdiction over said trust, then we must determine the appropriate remedy, that is, whether we should order a new trial or, instead, simply reverse the judgment in part and keep the remaining orders intact. After consideration of the issues, we agree with both parties that the trial court did not properly retain jurisdiction. Nevertheless, we hold that the court's determination regarding the trust is severable. Therefore, we reverse the judgment of the trial court solely as it pertains to this issue.

A

Although it is well established that trial courts have broad equitable remedial powers regarding marital dissolutions; *Doe* v. *Doe*, 244 Conn. 403, 423, 710 A.2d 1297 (1998); it is equally well settled that "[c]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute." *Passamano* v. *Passamano*, 228 Conn. 85, 88 n.4, 634 A.2d 891 (1993). Thus, the court's authority to transfer property appurtenant to a dissolution proceeding requires an interpretation of the relevant statutes. Statutory construction, in turn, presents a question of law over which our review is plenary. *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53, 607 A.2d 424 (1992).

According to our long-standing principles of statutory construction, our fundamental objective is to ascertain and give effect to the intent of the legislature. *Conway* v. *Wilton*, 238 Conn. 653, 663, 680 A.2d 242 (1996). In determining the intent of a statute, "we look to the

words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Bornemann* v. *Bornemann*, 245 Conn. 508, 515, 752 A.2d 978 (1998).

On its face, the statutory scheme regarding financial orders appurtenant to dissolution proceedings prohibits the retention of jurisdiction over orders regarding lump sum alimony or the division of the marital estate. General Statutes § 46b-81 (a) provides in relevant part: "At the time of entering a decree . . . dissolving a marriage . . . pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . ." Similarly, General Statutes § 46b-82 also provides that the court may order alimony "[a]t the time of entering the [divorce] decree . . . ." General Statutes § 46b-86,[13] however, explicitly permits only modifications of "any final order[s] for the *periodic payment of permanent alimony* . . . ." (Emphasis added.) Consequently, the statute confers authority on the trial courts to retain continuing jurisdiction over orders of periodic alimony, but not over lump sum alimony or property distributions pursuant to § 46b-81. *Bunche* v. *Bunche*, 180 Conn. 285, 289, 429 A.2d 874 (1980) (§ 46b-81 deprives trial court

---

[13] General Statutes § 46b-86 provides in relevant part: "(a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. . . ."

of continuing jurisdiction over assignment of property appurtenant to dissolution proceeding).[14]

Our conclusion is also based on the fact that the marital estate divisible pursuant to § 46b-81 refers to interests already acquired, not to expected or unvested interests, or to interests that the court has not quantified. See *Rubin* v. *Rubin*, 204 Conn. 224, 230–31, 527 A.2d 1184 (1987). This is true, notwithstanding the fact that General Statutes § 46b-81 (c) further provides in part that "[i]n fixing the nature and value of the property, if any, to be assigned, the court . . . shall consider . . . the opportunity of each [party] for future acquisition of capital assets and income. . . ." Such a guideline merely makes parties' future economic statuses relevant to the trial court's assignment of property at the time of the marital dissolution. See, e.g., *Cuneo* v. *Cuneo*, 12 Conn. App. 702, 703, 533 A.2d 1226 (1987) (plaintiff's inability ever to have earning capacity of defendant was factor in trial court's determination that plaintiff deserved alimony from defendant).

The present case is analogous to several prior decisions of this court wherein we have read the same statutory scheme to deny the trial courts jurisdiction over various forms of expected property. For example, in *Krause* v. *Krause*, 174 Conn. 361, 364–65, 387 A.2d 548 (1978), this court held that a trial court in a dissolution action could not award a present interest in a potential acquisition. Similarly, in *Rubin* v. *Rubin*, supra, 204 Conn. 227–28, this court concluded that the trial court could not assign a contingent interest in expected property pursuant to § 46b-81. More recently, in *Eslami* v. *Eslami*, 218 Conn. 801, 806–807, 591 A.2d 411 (1991), this court affirmed, based on our holdings in *Krause*

---

[14] Although in *Bunche* v. *Bunche*, supra, 180 Conn. 289, the court was reading a prior version of § 46b-81, the subsequent amendments to the statute merely divided the section into subsections and made slight changes that are not pertinent to the present appeal.

and *Rubin*, the trial court's decision not to consider the undetermined value of the wife's interest in her father's estate where there was an ongoing dispute over the settlement of his estate. The trial court in *Eslami* had declined to account for any such interest when it divided the marital property because the actual nature and extent of the wife's interest was indeterminable at the time of trial. Id., 806. This court concluded that the trial court properly had retained jurisdiction over the periodic alimony, however, so as to allow for a modification pursuant to § 46b-86 when the estate was settled. Id., 808; cf. *Lopiano* v. *Lopiano*, 247 Conn. 356, 367–71, 752 A.2d 1000 (1998) (personal injury award was divisible marital property because presently existing property interest of determinable value); *Bornemann* v. *Bornemann*, supra, 245 Conn. 536 (stock options were marital property properly divided between parties where existence of stock options proven and adequate evidence admitted in order to calculate valuation of asset).

Our reading of the statute furthers the legislative goals underlying this particular statutory scheme. The purpose of a property division pursuant to a dissolution proceeding is to unscramble existing marital property in order to give each spouse his or her equitable share at the time of dissolution. *Rubin* v. *Rubin*, supra, 204 Conn. 228. By comparison, the purpose of both periodic and lump sum alimony is to provide continuing support. *Dubicki* v. *Dubicki*, 186 Conn. 709, 714 n.2, 443 A.2d 1268 (1982). Hence, once the marital property is divided, the court has fulfilled its responsibility, and, therefore, continuing jurisdiction over divided marital property does not further the goal of the statutes. Similarly, an attempt to divide *expected* property is outside the scope of the statutes because it does not divide the property that the parties' possessed during their marriage.

Finally, our conclusion that the trial court improperly retained continuing jurisdiction is further supported by our policy favoring finality of lump sum alimony and property awards. See, e.g., *Turgeon* v. *Turgeon*, 190 Conn. 269, 282, 460 A.2d 1260 (1983) (lump sum alimony is final judgment that is not modifiable, even if substantial change of circumstances); *Bunche* v. *Bunche*, supra, 180 Conn. 289 (no continuing jurisdiction over assignment of property in dissolution proceeding); *Scoville* v. *Scoville*, 179 Conn. 277, 279–80, 426 A.2d 271 (1979) (lump sum alimony nonmodifiable final judgment); cf. *Walsh* v. *Walsh*, 190 Conn. 126, 131 n.2, 459 A.2d 515 (1983) (explaining that this court's "holding is limited to the unique circumstances of the present case" where dissolution court permitted to retain jurisdiction over temporary financial arrangement).

B

Both parties agree that the trial court did not have jurisdiction to make an order retaining continuing jurisdiction over an expected interest in the aforementioned trust. They disagree, however, on the appropriate remedy that such an improper order requires. The defendant argues that a new trial is necessary because the jurisdictional order is a part of what is often referred to as the "carefully crafted mosaic" that constitutes financial orders in a dissolution action. See, e.g., *Sunbury* v. *Sunbury*, 210 Conn. 170, 175, 553 A.2d 612 (1989). The plaintiff counters that no new trial is necessary because the jurisdictional order is "mere surplusage."[15]

---

[15] The plaintiff borrows the term "mere surplusage" from *Hartford National Bank & Trust Co.* v. *VonZiegesar*, 154 Conn. 352, 362, 225 A.2d 811 (1966). In that case, this court set aside a trial court judgment and remanded the case instead of ordering a new trial where the trial court had reserved jurisdiction to determine attorney's fees subsequent to entering the judgment in an action involving the interpretation of a trust. Id., 363.

This court and the Appellate Court have often described financial orders appurtenant to dissolution proceedings as "entirely interwoven" and as "a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Fahy* v. *Fahy*, 227 Conn. 505, 515, 630 A.2d 1328 (1993); *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826 (1984). Consequently, when an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders. For example, in *Sunbury* v. *Sunbury*, supra, 210 Conn. 173, we explained that, "where the Appellate Court ruled that the trial court should have found the defendant's net income to be 46 percent higher than it actually did, the trial court on remand could no more fashion just and equitable financial orders by reconsidering only the issue of periodic alimony, than it could reassemble a broken vase with only one piece." Similarly, in *Krafick* v. *Krafick*, 234 Conn. 783, 806, 663 A.2d 365 (1995), we held that the trial court improperly had failed to consider the defendant's pension interest as a marital asset and, accordingly, remanded the case to the trial court to reconsider all of its financial orders. Such a reexamination was necessary because we concluded that the pension interest and the circumstances already considered were interdependent factors upon which the court should base its financial orders.

Every improper order, however, does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors. For example, in *Cuneo* v. *Cuneo*, supra, 12 Conn. App. 709–11, wherein the Appellate Court held that the trial court had abused its discretion in refusing

to consider the defendant's new financial affidavit and related testimony, the court reversed the trial court's judgment only as to the orders regarding the division of property. Its limited remand was based on the fact that the alimony and support orders had been created to meet the short term needs of the plaintiff, whereas the division of property had been ordered because of the plaintiff's need for long-term financial security. Id., 711. Likewise, in *Lowe* v. *Lowe*, 47 Conn. App. 354, 357–58, 704 A.2d 236 (1997), the Appellate Court reversed only one financial order, a postmajority support award, because the trial court improperly had awarded postmajority support based upon an oral agreement of support instead of a written agreement, as required by General Statutes § 46b-66.[16] In *Lowe*, the Appellate Court concluded that the alimony and premajority support orders were separate and distinct, and, therefore, severable from the postmajority support order. Id., 358.

When determining the appropriate remedy in the present case, we focus on the specific language of the trial court's order as set forth in its articulation. The trial court's wording is as follows: "If the plaintiff is determined to have any interest in any Smith family trust, this court will retain continuing jurisdiction until September 30, 2007, to divide that asset as property." Thus, the court did not link its jurisdiction over its potential division of the trust to its concurrent financial orders. Cf. *Standish* v. *Standish*, 40 Conn. App. 298, 670 A.2d 1330 (1996) (financial orders interwoven and interdependent where trial court improperly vacated, modified and amended its original dissolution orders

---

[16] General Statutes § 46b-66 provides in relevant part: "If the agreement [submitted by the parties in a dissolution action] is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of [the court] order and shall be enforceable to the same extent as any other provision of such order or decree . . . ."

regarding, inter alia, mortgage payments and life insurance). Rather, the court declared that it was retaining jurisdiction over the trust solely in order to "divide *that asset* as property," if it were ever determined that the plaintiff did indeed have an interest in such a trust. (Emphasis added.) Thus, it appears that the trial court determined its other financial orders independently from the possible future existence of an interest in the trust. Consequently, reversing the judgment only insofar as it relates to that order does not undermine the other financial orders because its impropriety does not place the correctness of the other orders in question. Cf. *Tyc* v. *Tyc*, 40 Conn. App. 562, 672 A.2d 526, cert. denied, 237 Conn. 916, 676 A.2d 398 (1996) (failure to consider party's workers' compensation claim for loss of earning capacity places in doubt propriety of other financial orders because claim was part of court's equitable considerations when making entire asset distribution scheme). We, therefore, conclude that the issue of the court's jurisdiction over the trust is severable from all of the other financial orders made by the trial court.

Finally, the defendant maintains, without citing any authority, that the court was obliged to determine, at the time of trial, whether the plaintiff possessed any interest in a family trust. We disagree. At trial and in oral argument before this court, the defendant explicitly denied claiming any interest in such a trust should it ever be established that the plaintiff was indeed a trust beneficiary. Rather, the defendant explained that she had introduced evidence of the trust's existence solely to impeach the plaintiff's credibility as a witness because he had denied possessing any such interest. In the absence of any claim of interest by the defendant, we cannot conclude that the trial court was incorrect when it failed to determine whether the plaintiff had an interest in a trust that was subject to equitable distribution.

## II

The defendant claims that the trial court had no statutory authority to award alimony to both parties pursuant to § 46b-82 and, additionally, that the terms and conditions of the alimony orders constitute an abuse of the trial court's discretion. We disagree and, accordingly, affirm the judgment of the trial court regarding both alimony awards.

### A

The defendant raises an issue of first impression for this court when she questions whether a trial court has the authority to order dual alimony pursuant to § 46b-82. Once again, our resolution of this issue is a matter of statutory interpretation over which our review is plenary. *Morton Buildings, Inc.* v. *Bannon,* supra, 222 Conn. 53. For the reasons explicated herein, we conclude that § 46b-82 permits dual alimony orders.

The relevant language of the statute provides that "the Superior Court may order *either* of the parties to pay alimony to the other . . . ." (Emphasis added.) General Statutes § 46b-82. When a statutory term is not defined, this court typically looks to the common understanding of the word as defined in dictionaries. *Connecticut National Bank* v. *Giacomi,* 242 Conn. 17, 33, 699 A.2d 101 (1997). The defendant argues that the word "either" in this sentence functions as a pronoun and, therefore, means one *or* the other. In contrast, the plaintiff asserts that "either" connotes one of two or more alternatives—the plaintiff, the defendant, or both. As set forth in his brief, the plaintiff bases his reading on the definition of "either" that explains that when "either" is used as a conjunction, it is "used as a function word before two or more coordinate words, phrases, or clauses joined [usually] by *or* to indicate that what immediately follows is the first of two or more alternatives." (Emphasis in original.) Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). More correctly, the

word "either" functions as an adjective in the phrase "either of the parties." According to Merriam-Webster's Collegiate Dictionary (10th Ed. 1993), "either" therefore means "being the one and the other of two . . . [or] being the one or the other of two." Consequently, in keeping with the language and grammatical construction of § 46b-82, a trial court has statutory authority to order dual alimony.

Even if we were to read "either" in its context to connote only one party *or* the other as the defendant suggests, that reading would not end our inquiry into a trial court's statutory authority because as a policy we do not resolve such issues based strictly on grammatical interpretations. *Castagno* v. *Wholean*, 239 Conn. 336, 339–40, 684 A.2d 1181 (1996) (court will not limit itself to literal application of statute). This is particularly true when the term at issue is ambiguous. See id. (court will go beyond text to interpret ambiguous statute); *Farms Country Club, Inc.* v. *Carini*, 172 Conn. 439, 444, 374 A.2d 1094 (1977) ("[w]here ambiguity exists, a court is not confined to the literal meaning of the words"). Therefore, we apply once again our other tools of statutory interpretation.

Although the legislative history of § 46b-82 is inconclusive as to the intended meaning of the word "either," the legislative purpose in enacting the relevant statutory scheme does not support the defendant's position that "either" means only one party *or* the other. The purpose of alimony is to ensure that the parties fulfill their continuing duty to support. *Rubin* v. *Rubin*, supra, 204 Conn. 228. The authority to modify an alimony order "upon a showing of a substantial change in the circumstances of either party" further serves this purpose. General Statutes § 46b-86. By ordering dual alimony, a trial court is allowing for its order to have the maximum adaptability possible. This flexibility is especially important when, as in the present case, the parties'

economic history includes volatile investments and incomes that have varied dramatically.

By ordering dual alimony, the court places itself in a position to address most responsively the future economic situations of the parties. For example, based on the order at issue, the trial court could later order the plaintiff to pay the defendant $400 per month alimony and order the defendant to pay only $1 per year alimony should the plaintiff's income increase drastically and the defendant's income decrease radically. If the trial court had not ordered the plaintiff to pay $1 per year, however, the only relief it could afford the defendant would be to reduce her alimony obligation. In such an instance, in the future the trial court would have no statutory authority to order the defendant to pay alimony to the plaintiff. See General Statutes §§ 46b-82 and 46b-86.

In sum, the statutory scheme authorizes trial courts to award dual alimony, a tool that furnishes the trial court with maximum flexibility, allowing it to meet the ongoing needs of the parties in a dissolution action. We, therefore, hold that the trial court in the present case had the statutory authority to award dual alimony to the parties.

B

The defendant also claims that the terms and conditions of the periodic alimony ordered in the present case constitute an abuse of the trial court's discretion. We disagree.

As a preliminary step, we set forth the appropriate standard of review for this claim. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining

whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks omitted.) *Knock* v. *Knock*, 224 Conn. 776, 795, 621 A.2d 267 (1993).

We find no abuse of discretion regarding the trial court's alimony awards in the present case. The court ordered the defendant to pay the plaintiff $400 per month until December 30, 2005, and it ordered the plaintiff to pay the defendant $1 per year until September 30, 2007, or until the defendant's remarriage, whichever occurs first.[17] The court based the alimony orders, in part, on its finding that the plaintiff probably will continue to live far away from his children and is therefore likely to incur related travel expenses and, in part, on its assessment that the plaintiff's economic circumstances likely would not change greatly were he to remarry.

The defendant specifically claims that the court improperly based its alimony awards on its finding that the plaintiff likely will incur extensive travel expenses in order to see his children. Although we recognize that the matter of travel expenses incurred in order to see one's children is listed explicitly as a factor for a trial court properly to consider when awarding child support,[18] we note that it can also be a consideration in

---

[17] Additionally, the articulation provides that "[alimony] is not to be deducted from any child support payments, and all payments of child support and/or alimony are to be paid independently of one to the other." We note that the court's oral ruling of February 26, 1998, arguably is distinguishable regarding whether the parties can credit their financial obligations to one another. The written decision clearly treats the alimony and child support orders separately. Any ambiguity between the two decisions should properly have been addressed in a further motion for articulation. In the absence of any such motion, we treat the written decision as the final word on the subject.

[18] Section 46b-215a-3 (b) (3) (A) of the Regulations of Connecticut State Agencies lists "significant visitation expenses" as specific "extraordinary parental expenses" that justify deviation from the child support guidelines.

determining alimony. General Statutes § 46b-82 provides in relevant part that the court "shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment." Thus, the plaintiff's likely need to travel in order to visit his children falls squarely within the general criterion of the "needs of each of the parties . . . ." General Statutes § 46b-82. Furthermore, the mandatory criteria set forth in § 46b-82 is not an exhaustive list. Therefore, even if it were not interpreted to fall under a particular statutory criterion, the plaintiff's travel expenses would qualify as an equitable consideration for the court. See *Robinson* v. *Robinson*, 187 Conn. 70, 72, 444 A.2d 234 (1982) (court may consider factors not listed in § 46b-81 when determining just and equitable distribution of property).

The defendant further contends that the trial court's order improperly provides for the termination of the plaintiff's alimony obligations upon the defendant's remarriage, if she remarries before September 30, 2007, without providing for the termination of the defendant's alimony obligations if the plaintiff remarries before December 31, 2005. Section 46b-82, however, does not require identical terms and conditions between alimony orders. Furthermore, although a trial court must consider the various statutory factors, it is under no obligation to explain which factors had the greatest significance in the various financial orders appurtenant to a dissolution proceeding. *Caffe* v. *Caffe*, 240 Conn. 79, 82–83, 689 A.2d 468 (1997). On the contrary, the statute provides trial courts with wide latitude and equitable powers when determining financial orders pursuant to dissolution actions because they require

extremely fact sensitive resolutions. *Watson* v. *Watson*, 221 Conn. 698, 712–13, 607 A.2d 383 (1992). Consequently, a trial court may order one party to pay alimony for a certain time period or only upon certain conditions, without placing the same restrictions on the other party's alimony obligations. Accordingly, the trial court's alimony orders in the present case do not constitute an abuse of the court's discretion.

## III

Lastly, the defendant claims that the trial court improperly awarded the plaintiff $75,000 as his equitable share of the defendant's $275,000 settlement award from Willow. We review this claim under the abuse of discretion standard explicated above. *Beede* v. *Beede*, 186 Conn. 191, 194–95, 440 A.2d 283 (1982). We conclude that there was no abuse of discretion.

When the parties married in 1984, the defendant was working at Willow. She continued to work there until 1988, when she was dismissed. In 1990, the defendant commenced an employment lawsuit against Willow for breach of her severance agreement. In 1995, the defendant settled her claim for $275,000. The trial court found that the claim had arisen from the defendant's employment during the parties' marriage,[19] but that "[t]he plaintiff [had] made no efforts to acquire, preserve or appreciate [the defendant's] employment claim." Pursuant to § 46b-81, the court ordered the defendant to pay the plaintiff $75,000, which the court determined to be his equitable share of the $275,000 settlement, on an after tax basis.

The defendant's claims on appeal are twofold. She first contends that the order is inconsistent with the

[19] The court found approximately four fifths of the settlement to be a marital asset when the parties evenly divided their assets in 1990 because the parties were married for four out of the five years of the defendant's employment at Willow.

court's findings that the plaintiff had not been involved in obtaining the settlement and that the family had financial needs at the time of the settlement as a result of the plaintiff's sporadic employment. She further argues that there was no evidence admitted upon which the trial court could claim that $75,000 was the plaintiff's equitable share *on an after tax basis*. The plaintiff contends, however, that the court was justified in determining that the $275,000 settlement was a marital asset. He also maintains that there was ample evidence admitted regarding the defendant's tax rates for 1995 and 1996, the years in which she received the settlement proceeds, upon which to determine the plaintiff's after tax equitable share. We agree with the plaintiff.

To begin, the trial court reasonably found that the parties had intended to divide evenly their marital assets in 1990 when they split the proceeds of the sale of their Grahampton Lane home. The trial court also reasonably found that the defendant's claim against Willow was an inchoate marital asset at that point in time, because, through her work at Willow, the defendant had already earned an enforceable right to the compensation. Consequently, the trial court properly divided the net settlement proceeds between the parties pursuant to § 46b-81 when it dissolved the parties' marriage. See *Bornemann* v. *Bornemann*, supra, 245 Conn. 516 (pension benefits were marital property because they represented presently existing interest in that they created in holder enforceable contract right). The fact that the plaintiff may not have helped in the acquisition of the settlement does not vitiate the fact that the right to the asset had been earned mostly during the parties' marriage.

Second, the defendant's claim that there was no evidence regarding her 1995 and 1996 taxes from which the trial court could determine her net gain from the

$275,000 settlement, is without merit. Although the parties dispute the evidence submitted regarding the defendant's 1995 and 1996 tax rates, the defendant's financial affidavit of December 11, 1997, includes the amount of total taxes paid in those years. These figures alone establish an adequate basis upon which the court could have determined the plaintiff's equitable share, *on an after tax basis*. Furthermore, the defendant testified at trial regarding her 1995 and 1996 income and taxes.[20] This court has never required trial courts to calculate alimony or divide marital estates with precise mathematical accuracy. See, e.g., id., 530–32 (court only required to estimate value of stock options); *Krafick* v. *Krafick*, supra, 234 Conn. 804 (court has discretion to determine appropriate method of valuation of marital assets). It is well established that a trial court need not "assign specific values to the parties' assets" when determining financial orders appurtenant to dissolution proceedings. *Bornemann* v. *Bornemann*, supra, 245 Conn. 531. A trial court acts as the trier of fact when it evaluates the marital estate and determines each party's equitable share. Id. (court will often have to weigh opinions of appraisers, claims of parties and own general knowledge when establishing value, as well as determine and employ appropriate valuation method). As an appellate court, we review evidence to decide whether the trial court's conclusion was reasonable, not to determine whether a different conclusion could have been reached. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221, 435 A.2d 24 (1980). Accordingly,

---

[20] The court, in the decision it rendered orally, further explained its calculations as follows: "The court heard evidence that there [were] payments of taxes that had to be made by [the defendant based on the settlement], and the court prorated that figure to reduce it to a present value figure as of that date deducting for taxes and deducting for that portion of the earnings by [the defendant] from the time of her initial employment by [Willow] to the date of the marriage and excluded those from the division."

the trial court did not abuse its discretion when it determined that $75,000 was an equitable share of the settlement, *on an after tax basis*.

Finally, the defendant argues on appeal that the trial court should have deducted the legal expenses that she incurred in obtaining the settlement before dividing it between the parties. If, however, the defendant had wanted these legal expenses deducted from the $275,000 before the court divided it between the parties, she should have offered as evidence proof of these expenses. See *Carter* v. *Bartek*, 142 Conn. 448, 452, 114 A.2d 923 (1955) (burden of establishing mitigation of damages on party claiming mitigation). The defendant's brief, however, admits that she did not submit such evidence to the court. Consequently, we conclude that the trial court's award of $75,000 to the plaintiff was proper.

The judgment is affirmed, except with respect to the court's retention of jurisdiction regarding any Smith family trust; with respect to that part of the judgment, the judgment is reversed.

In this opinion the other justices concurred.