[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] CORRECTED MEMORANDUM OF DECISION
By complaint dated January 12, 1999, the plaintiff wife Donna C. Veale commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown, alimony, property settlement and other relief. The defendant Robert W. Veale, II, appeared through counsel and filed an answer and cross-complaint dated March 19, 1999. Both parties appeared with counsel on February 15 and February 25, 2000 and presented testimony and exhibits. The Court after hearing the testimony and reviewing the exhibits makes the following findings of fact.
The plaintiff wife (whose maiden name was Donna Elizabeth Coard) married the defendant husband on October 14, 1989 at Manchester, Connecticut. She has resided continuously in the State of Connecticut for one year next preceding the date of the filing of this complaint. All statutory stays have expired. The parties have no minor children born to the plaintiff wife since the date of the marriage. No other minor children have been born to the plaintiff wife since the date of the marriage. The court further finds that no state or municipal agency has or is contributing to the support of the parties.
The plaintiff is 42 years old, she received a Bachelors of Science Degree in Economics from the State University of New York at Albany in 1981. The plaintiff further enjoyed good health until August of 1997 when she noticed blurred vision, numbness to her face and slurred speech. She also suffered from an inability to walk steadily and a general tired condition. When this condition persisted for a few days she contacted her family physician who referred her to a neurologist, Dr. Bilcheck in Hartford, Connecticut. After taking a history and performing an examination, the plaintiff was referred for an MRI and spinal tap. The spinal tap and MRI were performed in September, 1997. Dr. Bilcheck diagnosed that the plaintiff suffers from multiple sclerosis.
The plaintiff sought a second opinion from another neurologist to CT Page 3232-b confirm the diagnosis. She was seen and treated by Dr. Joseph Guarnaccia, a neurologist specializing in multiple sclerosis at Yale New Haven Hospital. Said doctor confirmed the diagnosis of multiple sclerosis and placed the plaintiff under a regiment of care requiring the insertion of a shunt into her arm with a drug solution injected into the shunt for two to three hours per day for a five day period. Said injections were given by a nurse assigned by the doctor. After said treatment prescribed by Dr. Guarnaccia, the symptoms subsided in approximately 2 — 2-1/2 months. The plaintiff lost time from her employment for the first week of treatment and partial days thereafter until she returned to full-time work. She has had no reoccurrence of the above symptoms
Connecticut. She has worked for Citizen's Financial (formerly Farmers 
Mechanics Savings Bank) for the past 13 years and has a professional designation for series 7, 63, 24 and 65 and also insurance designations. The plaintiff's occupation includes sales of investments as a general securities broker including the ability to sell life insurance, long-term care, health insurance, variable life and annuities to customers of Citizen's Bank and others.
The plaintiff filed a financial affidavit claiming gross income of approximately $1,440.00 per week. The plaintiff, however, admitted that she made the following incomes for the previous calendar years: 1995 — $52,000.00; 1996 — $61,500.00; 1997 — $93,900.00; 1998 — $113,000.00 and 1999 — $114,000.00. The plaintiff's salary/commission formula was changed effective October 1, 1999 resulting in a claim by the plaintiff that she will make less money in calendar year 2000, unless she sells more products to equal comparable commissions paid in prior years. As to the plaintiff's future earning capacity, the Court concludes that it may be impaired based on the testimony of the plaintiff and Dr. Guamaccia. While it is difficult to predict future progression of her medical condition, progression of multiple sclerosis generally does not stop and more than one-half of people stricken with muscular sclerosis will have physical problems in the future according to the testimony.
The husband was employed at the Aetna Insurance Company as an underwriter from 1977 to May of 1994 making approximately $50,000.00 per year when he left. He was laid off as a result of the insurance industry down-sizing trend of the 90's. He remained unemployed for a period of 1-1/2 years. During this period of unemployment he received severance pay from Aetna of approximately $45,000.00. He also rolled over a net sum of $42,000.00 from his Aetna Investment Savings Plan to a rollover IRA. After the severance pay ran out the plaintiff collected unemployment for CT Page 3232-c the maximum period of 6 months in the amount of $9,230.00. He then went to work at Sears and earned approximately $4,000.00 to $5,000.00 gross commissions as an independent contractor/home improvement salesman. The defendant next obtained employment at Blue Ridge Insurance Company from November, 1995 until March, 1997. He earned $50,000.00 as a starting salary while employed at Blue Ridge. He quit work, based on his claim that the management had made his position and the positions of other employees too stressful. When he left his employment at Blue Ridge his salary had increased to $57,000.00.
The Court finds that he left said employment without advising the wife and without seeking and/or obtaining substitute employment prior to his leave. The defendant then remained unemployed for a period of an additional 1-1/2 years. He survived said period of time with the assistance of money lent from his mother and his brother, use of money in his IRA, loans of money from his wife and additional credit card charges. The defendant next returned to gainful employment in August of 1998 when he landed a job at Patron's Insurance Group as a commercial lines manager. The defendant earns approximately $51,500.00 per year from his insurance position at Patron's.
The parties met each other as a result of the defendant's advertisement in a local publication in the classified section which was read by the plaintiff who contacted the defendant. The defendant entered the relationship as a non-custodial divorced father of minor children. He resided in a home at Livingston Road, East Hartford, Connecticut. The children visited with their father every other weekend while the parties were dating. The plaintiff moved into the defendant's residence in March of 1998. By agreement of the parties, the plaintiff paid the sum of $240.00 per month towards the household expenses.
Due to pressure put on the defendant by his ex-wife concerning financial issues of their prior marriage, the plaintiff purchased the home at Livingston Road from the defendant and his ex-wife for the sum of $90,000.00. She borrowed $81,000.00 from a mortgage company and put down a total of $11,000.00 including closing costs which she obtained from her savings and money from her mother. From the proceeds of the sale, the defendant received $5,000.00 with his ex-wife receiving $20,000.00. The plaintiff purchased the house because she wanted to stay in the home with the defendant. She and his children enjoyed residence at the home and she further wanted the defendant's ex-wife off his back.
From the date of the purchase of the purchase of the Livingston Road property, the plaintiff paid the mortgage, taxes and insurance with the defendant paying the utilities, i.e., $800.00 per month paid by the CT Page 3232-d plaintiff, $400.00 per month paid by the defendant. In 1995 the defendant took out a home equity loan for household improvements in the amount of $18,000.00. She also paid the monthly mortgage payment on the second mortgage in the amount of $175.00.
The marriage of the parties financially deteriorated as of the date of the first unemployment of the defendant. Once the severance pay ran out, the plaintiff was required to pay the first mortgage, second mortgage and all of the other utility expenses for the property. While the parties did share some expenses for food and so forth, the Court finds that the lion's share of all of the household expenses, including mortgages were paid by the wife.
In 1998 the plaintiff decided that she wanted to move to a more desirable location and neighborhood. She advised the husband and took him to see a home on Ridgewood Road in West Hartford which was subsequently purchased by the plaintiff. She purchased the new home in her name only in November of 1998 for the sum of $183,000.00. She financed $146,000.00 by way of a mortgage and the balance of $37,000.00 by cash. To purchase the property, she was required to transfer money from her IRA and from her savings.
As a result of the poor condition of the home, at the time of the purchase, the plaintiff was required to obtain a second mortgage for rehabilitation and repairs including payments to a credit cards, car loan, etc. Since the date of the purchase, the plaintiff has paid the first mortgage and subsequent second mortgage and credit cards in her name. To make matters more confusing and complicated, the plaintiff sold the Livingston Road home on December, 1998 for the sum of $95,000.00. Unfortunately, there was a cash short fall of $6,500.00. To consummate the sale, the plaintiff was required to take a cash advance on her credit cards which was paid back from the funds received from the home equity loan on the Ridgewood Road property in January of 1999.
The Court further finds that the defendant made minor contribution towards the expenses of the new home subsequent to its purchase and prior to court order. The defendant did make payments of $60.00 per week commencing February of 1999 up to $100.00 per week in March or April, 1999 and more recently in the amount of $560.00 per month as required by the Court after a contested pendente lite hearing.
The prospects of the success of this marriage was doomed from the beginning. The Court finds that the plaintiff and the defendant disagreed as to the plaintiff's participation in the raising of the children. This complicated the raising of her stepchildren which added CT Page 3232-e further discord in the relationship. Once the defendant became unemployed, the defendant did not manage his money in a manner consistent with good judgment. It is evident by the record and the testimony of the parties that the defendant decided to wait until he collected all of his severance pay and unemployment for the maximum period of 6 months before he obtained any substantial gainful employment. During his second self-imposed period of unemployment for 1-1/2 years after his voluntary quit from Blue Ridge Insurance, the defendant's effort to seek other gainful employment was less than convincing. His spending habits further complicated his financial dilemma resulting in his necessity not only to borrow from his mother, his brother but also from his wife, who was working a substantial amount of hours on a regular basis consistently throughout the marriage.
While the above factors would be normally sufficient to result in the breakdown of the marriage, these parties unfortunately were cursed with the miscarriage of a child deeply desired by the plaintiff and the defendant's relationship with a co-worker that he claims was platonic in nature. The Court finds that, after listening to the plaintiff and the defendant, and adjusting the veracity of each "he said, she said" allegations, the defendant was primarily at fault for the breakdown of the marriage. The Court further finds that the defendant's verbal conduct toward the plaintiff punctuated by his unrefuted statements to her "that God was punishing her by causing the miscarriage" was cruel and inhumane. The record also discloses that after a verbal confrontation, the defendant urinated on the living room rug and bathroom rug in the parties new home.
The Court further finds that the psychological and emotional marital infidelity caused by the defendant's relationship with his co-worker, Sandra, contributed to the plaintiff's lack of trust of the defendant. The relationship whether platonic or sexual in nature undermined the marital relationship of the parties. (See Plaintiff's Exhibit 6a)
The Court further finds that the plaintiff's naivete in entering the relationship with a divorced father of minor children with the economic pressures flowing therefrom also contributed to the breakdown. The plaintiff's and the defendant's need for the finer things in life also contributed to the breakdown of the marriage. The Court has considered the fault of the parties as a factor in the overall orders in this case.Sands v. Sands, 188 Conn. 98 (1982).
As of the date of the trial the Court also finds that the parties have a difference in present earnings based in part by the defendant's failure to maintain steady employment and salary increases resulting CT Page 3232-f from his previous unemployment periods. There is also a future potential for a substantial difference in earnings and earning capacity if the plaintiff is rendered partially and/or totally incapacitated to earn income in her field as a result of the progression of her multiple sclerosis condition. The future earning capacity of the parties must be considered in light of the plaintiff's medical condition. Carey v.Carey, 29 Conn. App. 436 (1992). The Court concludes that dual alimony is appropriate and required based upon the facts of this case. C.G.S. § 46b-82, Smith v. Smith, 249 Conn. 265 (1999).
The Court has also considered all of the statutory factors of the Connecticut General Statute §§ 46b-62, 46b-81, 46b-82, and other pertinent statutes, the tax implications, and as previously stated, the parties present earnings and future earning capacity, the causes of the breakdown of the marriage and the consequences of the financial award is set forth below.
Judgment shall enter dissolving the marriage of the parties on the grounds of irretrievable breakdown. It is further ordered that:
1. Alimony.
(a) The plaintiff shall pay alimony to the defendant in the amount of $100.00 per week non-modifiable in term or amount for a period of 2 years or the first of the occurrence of the following events: (1) death of either party; (2) marriage of defendant; (3) cohabitation with a third party as defined in Connecticut General Statutes § 46b-86 (b).
(b) The defendant shall pay alimony to the wife in the amount of $1.00 per year for a period of 15 years or the first of the occurrence of the following events:
1. Death of either party; or
2. Marriage of the plaintiff.
Said alimony shall be non-modifiable as to term only.
2. Real Property. The plaintiff shall have all right, title and interest in and to the residence located at 247 Ridgewood Road, West Hartford, CT including all appliances and fixtures. The plaintiff shall pay and hold the defendant harmless from any liability or the mortgage, taxes and insurances incurred for said property. The plaintiff shall have all right, title and interest in and to the condominium located at 24 Merrill Street, Unit A-3, Hartford, Connecticut. CT Page 3232-g
3. Automobiles. The plaintiff shall have all right, title and interest in and to the 1996 Volkswagen Passat automobile. The defendant shall have all right, title and interest in and to the 1998 Mercury Sable lease.
4. Bank Accounts, Stocks and Bonds. The plaintiff shall have all right, title and interest in and to her People's checking account, Putnam Mutual Fund, AIM Mutual Fund listed on her financial affidavit dated February 15, 2000. The defendant shall have all right, title and interest in and to his Citizen's Bank checking account, Putnam Mutual Fund listed on his financial affidavit.
5. Life Insurance. The plaintiff shall have all right, title and interest in and to the life insurance policy presently in effect at her present place of employment. The defendant shall have all right title and interest in and to the life insurance policy presently in effect at his present place of employment. The parties, however, shall name the other as irrevocable beneficiary of said insurance insuring his or her life so long as that party has an obligation to pay alimony pursuant to the provisions of this judgment. Neither party shall have the right to borrow said policy against cash value, if any, until he or she is relieved of the obligation to pay alimony.
6. Household Furnishings and Personal Effects. The parties shall divide the personal property and effects presently located at the marital residence to their mutual satisfaction. If the parties cannot agree to the division of certain articles of personal property, the party who paid for 51% or more of said article shall be entitled to said article of personal property.
7. Exclusive Possession of 247 Ridgewood Road, West Hartford. The defendant shall vacate possession of 247 Ridgewood Road, West Hartford property on or before 15 days after receipt of $32,500.00 transferred by the plaintiff to the defendant's IRA as provided in paragraph 9 below.
8. Debts. The plaintiff shall pay, indemnify and hold the defendant harmless from any liability on her Citibank Mastercard, Keybank Visa, Discover card, First USA Visa and Hartford Dental Group debts listed on her financial affidavit dated February 15, 2000. The defendant shall pay and hold the plaintiff harmless from any liability on his American Express, Sears, Citibank debts, Faccadio Dorsey, P.C., IRS and car lease debts listed on his financial affidavit dated February 15, 2000. If either party fails to pay any debts and/or files for bankruptcy resulting in the assumption by the others of liability or obligation to CT Page 3232-h pay said debt the indemnification and hold harmless provisions of this paragraph shall be considered as further support and maintenance owed by the defaulting party to the other party and further non-dischargeable in the event of the defaulting parties filing of voluntary or involuntary bankruptcy.
9. Pension Plans, IRA's, 401k's. The plaintiff shall have all right title and interest in and to her Citizen's Bank Sec. 401k plan and Citizen's Bank Noncontributory Defined Benefit Pension Plan listed on her financial affidavit dated February 15, 2000. The defendant shall have all right, title and interest in and to his Aetna Pension Plan listed on his financial affidavit dated February 15, 2000 and his Patron's Plan Retirement benefits valued at $1,429.00 as of the date of trial.
The plaintiff shall transfer the sum of $32,500.00 from her Kemper IRA listed on her financial affidavit dated February 15, 2000 (total value $64,945.28) to an IRA to be established by the defendant within 30 days of the date of this judgment. The remaining funds in said Kemper IRA of approximately $32,455.00 shall be the sole property of the plaintiff.
10. Plaintiffs Loans to Defendant During the Marriage. The Court has previously found that the defendant borrowed the sum of $15,150.00 from the plaintiff during the course of the marriage. The Court has considered said debt owed from the defendant to the plaintiff in the calculation and transfer of funds from the plaintiff to the defendant. The defendant has no further obligation to repay said loans to the plaintiff.
11. Counsel Fees. Each party shall pay his or her own counsel fees.
12. Pendente Lite Orders: Re: Arrearage Contribution Toward HouseholdExpenses. The defendant shall continue to pay to the plaintiff pendente lite order of $560.00 per month until the date of this judgment. The defendant is found in arrears in the amount of $260.00 as of the date of trial to be paid in full within 30 days of the date of this judgment. Any further arrearage if any owed since the date of trial to the date of this judgment shall be paid within 60 days of the date of this judgment.
Devine, J. CT Page 3233