[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage and related relief.
Before recounting the facts, a brief history of the case is in order. The case was tried on all or parts of 14 different dates, over a period of 6 months (15 dates over 9 months including final motions and closing arguments). There were approximately 76 exhibits offered and admitted into evidence. As stated below, there were many assets of the parties concerning which a number of different experts testified. The parties filed extensive trial briefs and claims for relief. The parties consented to extensions for the court to file its memorandum of decision. Prior to the expiration of these extensions, the plaintiff moved to reopen the evidence and, after due notice and hearing, said motion was granted. The plaintiff later moved to withdraw her motion nunc pro tunc. The defendant does not object, and the plaintiffs motion is hereby granted.
The plaintiff, Margery Bobrow, and the defendant, Stephen N. Bobrow, were married on January 16, 1986, in New York, New York. There are no children born of the marriage; however, the parties have one child by adoption, Alexandra, born June 12, 1989. Neither party is, or has been, the recipient of public assistance. The plaintiff has resided continuously in the state of Connecticut for at least twelve months next preceding the date of the filing of the complaint; therefore, this court does have jurisdiction. The marriage has broken down irretrievably, and a decree of dissolution shall enter on that ground.
The plaintiff is 52 years old and in good health. She received a B.A. degree in sociology from New York University, in 1970. She had several jobs following that, but gravitated to the commercial real estate business and received her brokers license in 1981. Her highest income in that field was $75,000-$ 100,000 per year. The plaintiff essentially stopped working in 1986 soon after she married the defendant. She has not worked since then. This is the plaintiffs third marriage.
The defendant is 53 years old, and is also in good health. He was one semester short of a degree in business administration at New York University when he left school. The defendant has been self-employed in the real estate and development field since approximately 1969, for most of his professional career. This is his first marriage. CT Page 9013
The plaintiff came into the marriage with, and continues to retain, an interest in several family or closely held corporations and partnerships. These are Westmill Clothes, Inc. and Tuxaco, Inc., whose business is formal wear and accessories; Twin Towers and 1101 Associates, which owns two office buildings in Arlington, Virginia; and C W Enterprises, a real estate partnership. The plaintiff has a minority interest in each, and does not actively participate in the running of these businesses. With the exception of some small interest income, the plaintiffs sole source of income is that which she derives from these businesses. The plaintiffs estimated 1998 income from them is as stated on her December, 1998 financial affidavit. Her taxable income was estimated to be $411,798; due to a holdback for working capital, approximately $83,000 is so-called "phantom income," so that the plaintiff should have received $328,732, or $27,394, gross, per month. Her net would have been $12,794 per month.
The value of the plaintiffs interests in these entities was the source of competing testimony and appraisals. "In appraising property, the trier of fact makes an independent determination of value in light of all of the circumstances of the case and the evidence presented. Pandolphe's Auto Parts. Inc. v. Manchester, 181 Conn. 217, 220, 435 A.2d 24 (1980); Birnbaum v. Ives, 163 Conn. 12, 21, 301 A.2d 262 (1972). As the trier of fact, the court may accept or reject the testimony of an expert witness in whole or in part; Smith v. Smith 183 Conn. 121, 123, 438 A.2d 842
(1981); and its decision is accorded great deference. Breen v. Breen,18 Conn. App. 166, 174, 557 A.2d 140 (1989). Ultimately, the determination of the value.... rests on the considered judgment of the trial court which takes into account the different opinions expressed by the witnesses. Moss v. New Haven Redevelopment Agency, 146 Conn. 421,425, 151 A.2d 693 (1959)." (partial text omitted) Polomski v. Polomski,24 Conn. App. 491, 492 (1991).
The court, therefore, applies these principles to the evidence presented. The court finds that the plaintiffs appraisal of her interests in Westmill, Tuxaco and C W Enterprises was more credible than that offered by the defendant. Accordingly, the court finds that the value of the plaintiffs interests in these businesses was as follows: Westmill-$120,000; Tuxaco-$528,000; and C W Enterprises-$24,000. On the other hand, the court believes that the testimony and appraisal offered by the defendant as to the value of Twin Towers and 1101 Associates was more credible than that offered by the plaintiff. Therefore, the court finds that the value of the plaintiffs interests there are approximately $1,630,000. This is derived by taking their fair market value of $232 million, less approximately $69 million debt, for equity of $163 million, and multiplying the plaintiffs one percent interest by that differential. CT Page 9014
In so finding, this court denies the plaintiffs motion to strike or preclude the testimony and appraisal of the defendant's expert, Robert von Ancken. The court does so realizing that the von Ancken appraisal was as of October 1, 1997, the approximate date of the parties' separation, and that it could have been done as of a full year later, October 1, 1998. The court is not unmindful of the principle that, generally, marital assets are to be valued by the court as of the date of dissolution of the marriage, and not the date of the parties' separation. See, Sunbury v. Sunbury, 216 Conn. 673, 676 (1990). This instruction does not appear to be absolute. "...[T]he financial awards in a marital dissolution case should be based on the parties' current financial circumstances to the extent reasonably possible." Cuneo v. Cuneo, 12 Conn. App. 702, 709
(1987) (emphasis added). Compare, Kinderman v. Kinderman,19 Conn. App. 534, 537-8 (1989). Perhaps more significantly, von Ancken testified that an appraisal as of October 1, 1998 would have, if anything, produced a higher value inasmuch as comparable property values rose since 1997. The court has considered the von Ancken appraisal and his trial testimony in conjunction with each other in fixing the value of the plaintiffs interests not as of October 1, 1997, but as of the more current time of trial and date of dissolution. Therefore, it can be said that no practical prejudice is suffered by the plaintiff as the result of the admission of the von Ancken appraisal. See, Cuneo, supra, at 707.
The most significant asset of the defendant is his interest in a commercial development referred to at trial as "I-93 Somerville." Prior to the marriage, the-defendant and a partner had acquired an option to purchase a vacant tract of about 11 acres outside Boston, Massachusetts. They exercised the option, and recorded title shortly after the marriage. Thereafter, there were events which resulted in the Paul Milstein, of New York, becoming the defendant's new partner. The property was developed and has two "anchor stores", The Home Depot and Circuit City. The defendant has a 50 percent interest in this development. As was the case with the plaintiff, there were conflicting testimony and appraisals concerning the value of the defendant's interest. The plaintiff offered two appraisals: the appraisal of Reenstierna valued the development as having a fair market value of $31 million, as of December, 1998 using an income capitalization approach; a second appraiser, Rifkin, placed its value at approximately $33 million. The defendant's appraiser, Eschmann, valued the development as having a fair market value of $27.85 million using an income capitalization approach. The parties essentially agree that the mortgage debt on the property is about $22.6 million. The court finds that the Reenstierna appraisal was the most credible. The value of the defendant's interest, using 50 percent applied to the differential between $31 million and $22.6 million is, therefore, approximately $4.2 million. The court also finds that, CT Page 9015 again based upon the appraisal and testimony of Reenstiema, property known as I-93 Burnham, has a value of $840,000. The defendant has a 50% interest in this property as well.
Based upon his final financial affidavit of March 29, 1999, the defendant's gross income for 1998 was approximately $490,000. Of this, $350,000 was distributed from I-93 Somerville, $36,500 from I-93 Burnham Associates (a partnership involving the Burnham property, above), $90, 000 from two one-time property sales, and the balance from interest and dividend income and miscellaneous transactions. The defendant's approximate net income would have been $300,000.[1] Without the two one-time sales, the defendant's net was about $245,000.
The parties also contested the extent or significance of the plaintiffs contribution to the development and appreciation of I-93 Somerville. C.G.S. Sec. 46b-81 provides in part that "[t]he court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." " . . . . We point out that in determining the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates' ... the trial court must "accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets.' O'Neill v. O'Neill, 13 Conn. App. 300,311, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988)." (Citations omitted; emphasis in original.) Siracusa v. Siracusa, supra,30 Conn. App. 566-67." Burns v. Burns, 41 Conn. App. 716, 721 (1996), cert. denied, 239 Conn. 906 (1996).
The court believes that the plaintiff had a supportive presence, when called upon, in connection with I-93 Somerville. The parties' connection to Milstein, who came into the development when another financial backer attempted, in the defendant's words, to change the deal, was primarily the plaintiffs. Also, the plaintiffs independent income and her family's assistance allowed the parties to weather difficult times when the defendant was called upon to make capital contributions to the development of I-93. However, the finished product that is I-93 was due primarily to the defendant's labor and effort; the plaintiff did not assist on a regular, substantive basis, except as described above.
The minor child of the parties, Alexandra, was born June 12, 1989, and was adopted in 1990 (Plaintiff's Exhibit 2). She attended the Greenwich Academy prior to the 1999-2000 school year. The parties disagree as to her needs and care requirements. However, the parties, including counsel for the minor child, have agreed on a parenting plan, Plaintiff's Exhibit 5. At the request of the parties, the plan will be incorporated CT Page 9016 by reference into the final judgment of this court. Further, the court finds that the Connecticut child support guidelines do not apply to the facts of this case.
The court believes that there were a number of factors straining the marriage, until it finally broke down in approximately September, 1997. Although the parties have done well, financially, it was not without some stress. There were quite a number of household moves before the family finally settled down in the final marital residence (Plaintiff's Exhibit 1.) This home is valued at $1.05 million. As mentioned previously, the I-91 development put a financial strain on the family and there was, at least, the filing of a mortgage foreclosure action against the then family home, as well as IRS notices of levy. There were also personal difficulties between the parties, including the lack of intimacy in the five years before their ultimate separation. They also had pronounced, differing views as to how Alexandra should be raised. The plaintiff believes that Alexandra has, among other concerns, an "adoption disorder," requiring special care and attention. The defendant believes that Alexandra has received too much of the same, and needs simple discipline more than doctors. So, the marriage was not as "well off" as the parties might have the court believe.
The final cause of the breakdown of the marriage, however, did not occur until into or about September, 1997. It was then that the plaintiff caught the defendant in a lie concerning his whereabouts over a supposed business trip. The defendant had told the plaintiff that he was away on a brief business excursion in the Boston area. When the plaintiff did some "sleuthing" and confronted him with contrary evidence, the defendant claimed he was helping a former relationship, one Annie Gruenberger, close a business deal elsewhere. The issue of whether this was as far as his relationship to Gruenberger had gone, was hotly contested at trial. The court finds that the defendant had, in fact, been unfaithful to the plaintiff during this period of time. Following this confrontation between the parties in or about September, 1997, they finally separated. The defendant moved out in or about December (he moved in with Gruenberger shortly after); the plaintiff remained in the marital residence with Alexandra.
Finally, the plaintiff has incurred approximately $250,000 in counsel fees and related expenses in prosecuting this action, through the date of her final submission. The court makes an award for a contribution to be paid by the defendant to the plaintiff. The court believes that the contribution is fair and reasonable under all the circumstances, and a failure to award it would undermine the efficacy of the other orders of the court. Fitzgerald v. Fitzgerald, 190 Conn. 26 (1983). CT Page 9017
The court has carefully considered all of the evidence and the statutes made and provided for the dissolution of marriage in Chapter 815j of the Connecticut General Statutes, including but not limited to sections 46b — 60, 62, 81, 82 and 215, and hereby enters the following orders:
1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown;
2. The court hereby adopts and incorporates by reference the parties' "Final Parenting Agreement", dated April 1, 1998 (Plaintiff's Exhibit 5);
3. As and for child support, the defendant shall pay one-half of any and all reasonable and necessary medical, psychiatric, psychological, therapy, dental, orthodontic, optical, testing, tutoring, tuition, school supplies, uniforms, activity fees and camp expenses for the minor child. The defendant shall advance the plaintiff $2,250 per month toward the aforementioned expenses, on or before the first day of each month, in advance, subject to an annual accounting to be provided by the plaintiff on or before March 1St for the prior calendar year. In the event such expenses exceed $54,000 per year, the defendant shall pay one-half of the balance thereof within 30 days following said accounting. If such expenses are less than $54,000 per year, the plaintiff shall pay the defendant the sum of his overpayment within 30 days of said accounting. The order by Novack, J. regarding child support security in the amount of $10,000 shall continue as a final order, except that said security shall be held by the plaintiff, under the Social Security number of the defendant, and shall be security for timely payment of the defendant's obligations under this paragraph, until such time as the defendant no longer has a support obligation to the minor child.
4. The pendente lite arrearage of $2,275 for 1998-99 tuition and $500 for 1999 camp expense due the plaintiff by the defendant, shall survive the decree and be paid within 30 days of the date hereof.
5. All accounts in the name of either party for the benefit of the minor child shall be placed in the name of the plaintiff for the benefit of said child. The plaintiff shall place the accounts or funds in an irrevocable trust or UGMA (Uniform Gifts to Minors Act) account for the benefit of the child. Any tax returns to be filed on the behalf of the minor child shall be done by the plaintiff and the cost thereof shared equally between the parties. A copy of the same shall be provided to the defendant within 30 days of any filing.
6. The defendant shall provide, at his sole cost and expense, life CT Page 9018 insurance for the benefit of the minor child in the face amount of $750,000 payable to the existing life insurance trust (Defendant's Exhibit C), for so long as the defendant has any support obligation to the minor child. The defendant shall annually provide satisfactory evidence of the same, and shall instruct the issuer of said policy to notify the plaintiff of any premium which remains more than 20 days past due and payable.
7. The defendant shall have the right, at his sole cost and expense and for so long as allowed by law, to continue any medical or health insurance presently available to him and in force and effect under any policy issued to, or for the benefit of, the plaintiff.
8. The defendant shall transfer to the plaintiff, by way of a quitclaim deed in usual form, all of his right, title and interest in and to the marital home at 548 North Street, in Greenwich, Connecticut and, from the date of said transfer, the plaintiff shall be solely and exclusively responsible for any obligations relating thereto.
9. The court hereby adopts and incorporates by reference the pendente lite stipulation(s) of the parties and/or order(s) of the court, so that they shall survive the decree:
 (a) Plaintiff's Exhibit 12, and any further orders of the court, relating to the payment of taxes, interest and penalties by the parties, or either of them. Further, each party shall be severally responsible for and shall pay fifty (50) percent of any gross capital gains tax incurred in connection with the sale of the real estate at 359 North Street, in Greenwich, Connecticut. Within 60 days of the date hereof, the parties shall exchange and provide to one another whatever information is customarily used for the preparation of any tax returns, including but not limited to any and all construction and expense invoices and copies of any payment checks and receipts, and shall provide to one another a copy of the tax return and any amendments to the same, within 30 days of their filing;
(b) Plaintiff's Exhibit 13, relating to silverware;
(c) Plaintiff's Exhibit 14, relating to motor vehicle(s);
 (d) Plaintiff's Exhibit 15, relating to certain stock accounts belonging to the parties, and each party CT Page 9019 shall retain the balance of said accounts.
 The court shall retain jurisdiction to effectuate these orders and resolve any disputes concerning the same.
10. Plaintiffs Motion for Order Post-Judgment (No. 265) is granted as and in accordance with the parties agreement set forth in No. 272; the disagreement set forth in No. 272 is referred to the court (Novack, J.); Plaintiff's Motion to Correct and Supplement Record (No. 267) is denied.
11. The defendant shall transfer to the plaintiff, twenty-five (25) percent of all his right, title and interest in and to 75 Mystic Avenue Home Depot Shopping Center — I-93 Somerville Associates, L.P., and Bobrow Development Company. Notwithstanding said order, the defendant shall have the right to re-purchase said interest from the plaintiff for the sum of $1.030 million, plus simple interest at a variable rate equal to the prime rate as published in the Wall Street Journal, in cash or its equivalent, upon 90 days written notice to the plaintiff. The defendant shall retain all of his right, title and interest in and to the property or entity known as 19-27 Mystic Avenue or I-93 Burnham Associates, free of any demand or claim of the plaintiff.
12. No alimony is awarded to either party.
13. The parties shall mediate any disputes concerning personal property or personal effects with the office of family services, and if an agreement is not reached the court shall retain jurisdiction to make an award thereof. The personal property at issue shall be: the silver flatware, the wine collection, miscellaneous family videos and photographs, and a certain mirror, a pine kitchen table and chairs in the possession of the defendant.
14. The defendant shall pay to the plaintiff $100,000 towards the plaintiffs counsel fees. This award shall be inclusive of fees awarded in connection with the defendant's prior contempt adjudications. Further, the defendant shall reimburse the plaintiff the sum of $2,755 for the accounting and expert fees of Robert Rifkin relating to the defendant's prior contempt adjudications. Further also, the defendant shall pay the plaintiff $7,500 as reimbursement for reasonable testimonial expert fees for plaintiffs appraisers Reenstierna and Ritkin. Saif fees shall be paid within 60 days. CT Page 9020
15. Except or to the extent as set forth expressly hereinbefore, each party shall retain any assets and be responsible for any liabilities as set forth on their respective financial affidavits; each party shall retain whatever interest he or she has in Astoria Park L.P.
16. Except or to the extent as set forth expressly hereinbefore, any obligation required to be performed hereunder shall be performed within 30 days.
17. Counsel for the plaintiff shall prepare the judgment file.
So Ordered.
 _____________________ KAVANEWSKY, J.