[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has filed for a dissolution of her marriage with the defendant. Based upon the evidence presented at a contested hearing in this matter, the court makes the following findings.
The plaintiff and the defendant were married on July 16, 1977 in Madison, Connecticut. It is the plaintiff's first marriage and the defendant's second marriage. Four children have been born to the parties who are issue of their marriage. Only one child, Christopher, whose date of birth is July 3, 1984, remains a minor.
The parties stipulated during the trial to an award of joint legal custody of the minor child, Christopher, with primary physical residence with the defendant. They also agreed that the plaintiff shall have rights of reasonable and liberal visitation.
The plaintiff is forty-four years old. She is a high school graduate and attended one year of college. The plaintiff is currently unemployed due to a herniated disc in her back that requires surgery. She has scheduled the surgery and expects to be able to return to work after a recuperation period of six weeks.
The plaintiff's most recent work history began in 1996 when she became employed as a carpenter at New England Barns, earning $10 per hour with a net weekly wage of $400. Beginning in 1997, the plaintiff was employed at Frank's Lawn Service, a landscaping and snow plowing company owned by Frank Sanzero, where she earned $400 net income per week. CT Page 4462
In May 1998, the plaintiff formed a new business with Sanzero called Spacolli Enterprises, LLC. Spacolli Enterprises, LLC is a home improvement business. The plaintiff owns 50% of Spacolli Enterprises, LLC and Frank Sanzero owns the other half. The plaintiff's share of the business is valued at $12,000. The plaintiff worked in the business with Sanzero until November 2000 when she injured her back.
From the establishment of Spacolli Enterprises, LLC in 1998 through February 2000, the plaintiff used a substantial amount of the parties' joint funds to subsidize her business. The business was also used to pay various personal expenses of the plaintiff and Sanzero.
The plaintiff claims that she received no income from Spacolli Enterprises, LLC during 2000. She contends that the business merely paid some of her personal expenses in lieu of a salary and that she does not know the amount paid. I do not find the plaintiff's testimony credible on this issue. Although the business appears to be dormant due to the plaintiff's back injury, the plaintiff expects to resurrect the business after she recovers from surgery. Given the plaintiff's lack of truthful testimony, I am unable to determine the income that she can reasonably expect to earn from the business upon its resumption. I do find, based her prior work history, that she has a present earning capacity of $400 weekly.
The defendant is fifty-eight years old and, although he suffers from a heart arrhythmia, is generally in good health. In 1996, he retired from his job with the United States Department of Defense where he had been employed since 1974. At the time of his retirement, the defendant held the position of deputy directorate for surface ships and undersea warfare at the Naval Underwater Systems Center. He currently receives a pension from the Department of Defense in the amount of $642 weekly.
Since September 2000, the defendant has been employed full-time as a teacher at Xavier High School. He receives a net weekly income of $462.
The parties jointly own the marital home at 299 Old Toll Road in Madison, Connecticut. The property has a present fair market value of $240,000. It is not encumbered by any mortgage or liens. The home sits on land formerly owned by the defendant's parents. The defendant began constructing the home in 1975 prior to meeting the plaintiff. The defendant paid for the materials for the building of the home and performed much of the construction himself. In 1976, the plaintiff began assisting the defendant in the construction. The parties moved into the CT Page 4463 home in August 1977 and purchased the property on August 15, 1978 from the defendant's parents for $7,000.
The parties also own property at 289 Old Toll Road in Madison, Connecticut. The property consists of a three-family structure on .75 acres of land. It was purchased by the parties from the defendant's parents on August 6, 1994 for $145,000. The parties currently rent the three apartments. The income from the property barely exceeds its expenses. Rental income totals $421 weekly and expenses amount to $399 weekly, leaving net weekly income of $22. Based on the evidence presented, the court finds that the current fair market value of the property is $175,000. The property is encumbered by a mortgage with a principal balance of $100,000, resulting in a net equity of $75,000.
The plaintiff currently possesses a bank account at Fleet Bank with a balance of $1,500 and a life insurance policy with a cash value of $6,000. Immediately prior to filing this dissolution action, the plaintiff surrendered a life insurance policy with a cash value of $14,000 and used the funds solely for her own benefit.
The defendant maintains bank accounts at People's Bank with a balance totaling $6,300 and he holds two life insurance policies with a combined cash value of $48,078. The defendant also possesses a 1965 Jaguar with a current value of approximately $26,000. The parties also jointly own a certificate of deposit with the Bank of Bermuda valued at $8,087.
Each of the parties claims that the other is primarily at fault for the breakdown of the marriage. The plaintiff contends that their marriage dissolved because the defendant failed to fulfill his housekeeping responsibilities upon his retirement, he belittled and ignored her during the marriage and he refused to allow her to participate in the decisions regarding the provision of special education services to their son Christopher. The defendant claims that their marriage collapsed due to two extramarital affairs engaged in by the plaintiff. The court finds, based on the evidence presented, that the plaintiff is at fault for the breakdown of the marriage.
The plaintiff engaged in two extramarital relationships during the parties' marriage. The second relationship continues to this day. The plaintiff became romantically involved with Frank Sanzero, her business partner. This relationship was the primary cause of the breakdown of the parties' marriage. The plaintiff plans to live with Sanzero at his home in Plainfield, Connecticut upon the conclusion of these dissolution proceedings. He will also be financially supporting her because she will CT Page 4464 shortly be undergoing back surgery and unable to work during her recuperation.
The plaintiff has requested that the court award her periodic alimony. The significant length of the marriage, twenty-three years, weighs strongly in favor of alimony. However, the plaintiff's fault in causing the disintegration of the marriage and the future financial support that she will receive upon cohabiting with Sanzero argue against such an award. At the age of forty-four, the plaintiff is still relatively young. She also expects to fully recover from back surgery and return to full-time employment. The plaintiff will also be receiving a substantial distribution of property as a result of orders that will be issued pursuant to this divorce decree. After carefully considering all the criteria governing the award of alimony pursuant to General Statutes § 46b-82, I have determined that the provision of alimony to the plaintiff is not appropriate.
The plaintiff and the defendant also disagree over whether the plaintiff should receive a portion of the defendant's pension benefits. The defendant's pension benefits have vested and matured.[1] He is currently receiving those benefits on a monthly basis. The pension accrued over twenty-two years, during nineteen of which the parties were married.
Pension benefits are classified as property and their distribution is governed by General Statutes § 46b-81. Krafick v. Krafick,234 Conn. 783, 793 (1995). "Pension benefits represent a form of deferred compensation for services rendered." Id. The right to receive the deferred compensation is an asset of the marriage. "Pension benefits are an economic resource acquired with the fruits of the wage earner spouse's labors which would otherwise have been utilized by the parties during the marriage to purchase other deferred income assets. Both the nonemployed spouse and his or her wage earning marital partner have the same retirement goals and expectancies regarding the pension benefits as they would if they provided for their later years by using wage income to purchase other investments." (Citations and quotation marks omitted.) Id. 796.
My determination that the award of alimony to the plaintiff is not appropriate in this case does not necessarily preclude the distribution to her of a portion of the defendant's pension. Unlike alimony, pension benefits are property the division of which is controlled by General Statutes § 46b-81. Krafick v. Krafick, supra, 234 Conn. 793. While the statutory criteria governing the assignment of property under § CT Page 446546b-81 are similar to the statutory criteria governing the award of alimony under § 46b-82, they are not identical.[2] Moreover, the purpose underlying the award of alimony differs from the purpose behind the distribution of property. "The purpose of a property division pursuant to a dissolution proceeding is to unscramble existing marital property in order to give each spouse his or her equitable share at the time of dissolution. By comparison, the purpose of both periodic and lump sum alimony is to provide continuing support." (Citations omitted.) Smithv. Smith, 249 Conn. 265, 275 (1999).
The plaintiff is entitled to a portion of the defendant's pension benefits given the accrual of those benefits over the course of their lengthy marriage, the plaintiff's contributions, both financial and nonfinancial, to the marriage, and her lack of pension benefits of her own. The plaintiff's fault in ultimately causing the breakdown of her marriage, the significant disparity in the parties' ages and, given that disparity, the plaintiff's greater ability to acquire capital assets in the future counsel for a diminished distribution to her. After carefully considering all of the statutory criteria set forth in General Statutes § 46b-81, I award the plaintiff twenty-five percent of the defendant's monthly pension benefits.
The defendant has also filed a motion for contempt that is pending before the court.[3] The defendant claims that the plaintiff violated the pendente lite order issued by the court on March 2, 2000 requiring the plaintiff to pay fifty percent of the monthly bills. On February 8, 2001, the parties entered into an agreement which was approved by the court that the plaintiff owed $10,917.98 in unpaid household expenses and reserving for future resolution the defendant's claim that he was entitled to reimbursement of one-half of various additional expenses totaling 13,311.
The defendant has failed to prove that the plaintiff willfully violated the court's pendente lite order of March 2, 2000. The plaintiff's income was limited during the time period in question. She has also been unemployed since November 2000. Finally, she contests her responsibility to pay a number of the bills because she claims that they were personal expenses of the defendant.
Although I do not find that the plaintiff was in contempt of the court's order, I do find that an arrearage is owed by the plaintiff as a result of the court's March 2, 2000 pendente lite order. In addition to the arrearage of $10,917.98 previously agreed to by the parties on February 8, 2001, I find that the plaintiff is obligated to pay pursuant CT Page 4466 to the court's March 2, 2000 pendente lite order one-half of the following monthly expenses incurred by the defendant: household expenses of $4,600, telephone bills of $911 and life insurance premiums of $4,000. The total arrearage owed by the plaintiff is $15,673.48.
In determining the orders issued herein, I have carefully considered all the relevant statutory criteria, including those contained in General Statutes § 46b-81 as they relate to the assignment of property, § 46b-82 as they relate to the award of alimony, and § 46b-84 and the child support guidelines as they relate to the award of child support. The court enters the following orders:
1. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
2. In accordance with the agreement of the parties, the parties are awarded joint legal custody of the minor child, Christopher, with primary physical residence of the child with the defendant. The plaintiff is awarded rights of reasonable and flexible visitation. Both parties are ordered to successfully complete the parenting education program within sixty days of this dissolution judgment.
3. No alimony is awarded to either party.
4. Based on the defendant's present earning capacity of $400 net weekly income, the plaintiff is obligated to pay child support in the amount of $74 weekly. In accordance with the child support guidelines, the plaintiff is ordered to pay to the defendant $74 weekly in child support commencing May 16, 2001 which is eight weeks after her scheduled back surgery.[4] The defendant shall be responsible for the first one hundred dollars of any unreimbursed medical expenses for Christopher for each calendar year. The plaintiff shall pay 24% of any unreimbursed medical expenses for the minor child that exceed one hundred dollars per calendar year and the defendant shall pay 76% of any such unreimbursed medical expenses. The defendant shall maintain medical insurance for Christopher for so long as it is available at reasonable cost through his employer.
5. The defendant is awarded sole ownership and exclusive possession of the marital home at 299 Old Toll Road in Madison, Connecticut and the property at 289 Old Toll Road in Madison, Connecticut. The defendant shall be solely responsible for paying the mortgage, taxes, and liens, if any, on the properties. The defendant shall hold the plaintiff harmless and indemnify the plaintiff with respect to any and all mortgages, liens, CT Page 4467 encumbrances and taxes on the properties. The defendant shall take immediate steps to obtain, if possible, a refinancing of the mortgage on the property at 289 Old Toll Road in Madison, Connecticut. so that the plaintiff is no longer an obligor.
6. On or before July 28, 2001, the defendant shall pay to the plaintiff $136,000 as a property distribution. The property distribution due the plaintiff has been offset by the arrearage of $15,673.48 owed the defendant and by the $14,000 cash value of the life insurance policy surrendered by the plaintiff immediately prior to filing this dissolution action. The parties agreed at trial that any sum awarded to the plaintiff as a property settlement would be paid by the defendant through a refinancing of the real properties awarded the defendant. The defendant has been given one hundred and twenty days to refinance the properties and pay the plaintiff.
7. The certificate of deposit with the Bank of Bermuda valued at $8,087 shall be redeemed and the parties shall share equally in the net proceeds.
8. The plaintiff shall retain her entire interest in the bank account at Fleet Bank with a balance of $1,500 and the life insurance policy with a cash value of $6,000 listed on her financial affidavit.
9. The defendant shall retain his entire interest in the bank accounts at People's Bank with a balance totaling $6,300 and the two life insurance policies with a combined cash value of $48,078 listed on his financial affidavit.
10. By agreement of the parties, the plaintiff shall transfer to the defendant ownership of the three automobiles listed on her financial affidavit for use by the parties' two adult daughters. The defendant shall retain ownership of the 1984 Chevy Suburban, the 1988 Chevy Blazer and the 1965 Jaguar listed on his financial affidavit.
11. The plaintiff is awarded twenty-five percent of the defendant's monthly pension. The plaintiff shall be designated as an alternate payee under the defendant's pension plan with the right to receive twenty-five percent of the monthly benefits payable under the plan. It is intended that the distributions to the plaintiff under the pension plan shall be taxable income to her and not taxable income to the defendant. The plaintiff shall draft a Domestic Relation Order to effectuate this award. The draft shall be submitted to the defendant for his review and to the CT Page 4468 court for its approval. The court shall retain jurisdiction in order to enforce this provision.
12. The parties shall retain the personal property presently in their respective possession.
13. The defendant shall cooperate with the plaintiff so that she may exercise, at her election, her rights under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), to the extent such rights are available to her, to maintain health insurance at her expense under the defendant's health insurance plan.
14. The plaintiff's maiden name of Barbara Lloyd is hereby restored.
15. Each of the parties shall be solely responsible for payment of the liabilities listed on their respective financial affidavits.
16. Each of the parties shall-be responsible for the payment of their respective attorney's fees.
BY
Judge Jon M. Alander
 STATE OF CONNECTICUT COMMISSION FOR CHILD SUPPORT GUIDELINES WORKSHEET for the Connecticut Child Support and Arrearage Guidelines
Mother Father Custodian BARBARA RICCIUTI MICHAEL RICCIUTI [] MOTHER [] FATHER
OTHER CUSTODIAN Court SUPERIOR COURT D.N. Case No. Number of Children 1 Name of Child Date of Birth Name of Child Date of Birth CHRISTOPHER
I. NET INCOME (Weekly amounts) MICHAEL BARBARA 1. Gross income (attach verification) $1,223 $400 2. Federal income tax (allowable exemptions, dedudions credits) 185 0 2a. Eliminate refundable earned income credit on line 2 0 0 3. State and local income tax (allowable exempt, dedudions, Cr) 45 0 4. Sodal Security tax 35 0 4a. Mandatory retirement 0 0 5. Medicare tax 8 0 6. Health insurance premiums (other than child) 0 0 7. Mandatory union dues or fees 0 0 8. Non-arrearage payments — court ordered alimony child support 0 0 9. Imputed support obligation for qualified child 0 0 (Current spt all children/total children X #qualified children) 10. Sum of lines 2-9 $273 $0 CT Page 4470
11. Net Income (line 1 minus line 10) $950 $400
II.CURRENT SUPPORT
12. Combined net weekly income (rounded to nearest $10) $1,350 13. Basic child support obligation (from schedule) $250 14. Check here if noncustodial parent is a low-income obligor 15. Child's health Insurance premium $0 $0 16. Total current spt obligation (line 13 minus noncustodial $250 parent's line 15 amount if line 14 is checked-line 13 + line 15 total for all other cases) 17. Each parent's share of line 12 (If line 14 is checked, 70.37% 29.63% skip this line and line 19, and enter the line 16 amount in the noncustodial parent's column on line 18) 18. Each parent's share of the total current support $176 $74 obligation (line 17 times line 16 for each parent) 19. Health insurance premium adjustment $0 20. Social Security dependency benefits adjustment $0 21. Sum of lines 19 and 20 (for each parent) $0 22. Presumptive current support amounts $74 23. Recommended current support order(Noncustodial parent $74 only. If different from line 22 amount, explain on line 47)
III. UNREIMBURSED MEDICAL EXPENSE $0 $0 24. Net disposable income (line 11 plus line 23 for custodial parent; line 11 minus line 23 for noncustodial) 75.85% 24.15% 25. Each parentfs share of combined net disposable income (each parent's line 24 divided by sum of line 24 amounts)
IV. CHILD CARE CONTRIBUTION
26. Qualifying costs (enter contribution amount on line 43) $0 $0
V. ARREARAGE
27. Delinquencies on current support orders $0 28. Unpaid court-ordered arrearages 0 29. Support due for periods prior to support action (not 0 court-ordered) 30. Total arrearages $0
VI. ARREARAGE PAYMENT
31. Current support order from line 23 (or imputed support $0 obligation if there is no current support order or child is living with the obligor) CT Page 4471
32. 20% of line 31 $0 — (if line 14 is checked, skip line 32 and go to line 37) — (if the child for whom the arrearage is owed is deceased, emancipated, or over 18, skip line 32 and go to line 39) — (if the child is living with the obligor, skip lines 33-39 and: (1) if the obligor's gross income Is not more than 250% of poverty level enter $1 on line 40; OR (2) if the obligor's gross income is greater than 250% of poverty level, enter line 32 amount on line 40) 33. Obligor's line 11 amount $0 34. 55% of line 33 0 35. Line 34 minus line 31 0 36. Lesser of line 32 or line 35 (Enter here and on line 40 0 and skip lines 37-39) 37. 10% of line 31 0 38. Greater of line 37 or $1 (Enter here and on line 40) 0 39. 50% of line 31 (Enter here and on line 40) 0 40. Recommended arrearage payment $0 (If different from line 45, explain on line 47)
VII. ORDER SUMMARY
41. Current support order $74 42. Unreimbursed medical expense order $0 43. Child care contribution $0 To State To Family 44. Total arrearage $0 $0 45. Arrearage payment order $0 $0 46. Total child support award: $74
VIII. DEVIATION CRITERIA
47. Reasons for deviation from presumptive support amounts and/or arrearage guideline:
Prepared By Title of Preparer Date Prepared JUDGE JON ALANDER MARCH 27, 2001