## SANDRA STRICH *v.* RICHARD W. STRICH

Superior Court Judicial District of Ansonia-Milford at Milford—
File No. FA02 0079249S

Memorandum filed October 22, 2002

*Cody & Gonillo*, for the plaintiff.

*Mager & Mager*, for the defendant.

WINSLOW, J. The defendant, Richard W. Strich, moves, pendente lite, for relief from the automatic orders governing this dissolution of marriage action. In particular, the defendant petitions for an allocation of

---

$100,000 from his $233,000 credit union account.[1] The defendant seeks to use the $100,000 immediately to retain legal counsel in connection with criminal charges now pending against him. The plaintiff, Sandra Strich, does not consent to the pendente lite allocation of this asset. The court heard evidence on October 21, 2002, and received memoranda of law from legal counsel for each party. The issue appears to be one of first impression.

On August 20, 2002, the plaintiff served a complaint seeking a dissolution of marriage upon the defendant. On August 28, 2002, the defendant shot the plaintiff with a shotgun. The plaintiff was seriously injured. The defendant is now detained at the Garner correctional institution on bonds totaling $1,500,000. He faces several felony and misdemeanor charges.[2] The defendant claims that the automatic order barring the removal or disposal of marital assets has denied him the effective assistance of counsel in the pending criminal proceedings since he cannot hire private counsel without access to moneys for a retainer. He believes he is not likely to qualify as an indigent to acquire the services of a public defender since the marital assets in his name alone or jointly owned with his wife exceed $820,000. Of that amount, at least $233,000 rests in a credit union

---

[1] Just prior to the institution of the present action, the defendant closed seven CD and money market accounts that were in the names of his wife and himself jointly. The accounts totaled approximately $253,000. The defendant immediately transferred all the moneys into an account in his name alone at the Sikorsky Federal Credit Union. The parties agreed to withdraw $20,000 from that account to pay legal fees for the present divorce action. Two hundred thirty-three thousand dollars remains in the account.

[2] The defendant is charged with the crimes of attempted murder, burglary in the first degree, breach of the peace in the second degree, two counts of illegal discharge of a firearm, illegal possession of a weapon in a motor vehicle, criminal mischief in the first degree, assault in the first degree, criminal use of a weapon, interference/resisting arrest, carrying a weapon without a permit, criminal possession of a firearm, threatening and violation of a protective order.

account in the defendant's name and another $100,000 is in individual retirement and 401(k) accounts in the defendant's name alone.

The automatic orders required by Practice Book § 25-5 were annexed to the complaint and became binding upon the parties upon service of the writ. The first such order states: "Neither party shall sell, transfer, encumber, conceal, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of the court assets individually or jointly held by the parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorney fees in connection with this action." The defendant concedes that the proposed expenditure of the requested $100,000 is neither usual nor customary for business or household expenses and is not for attorney's fees in connection with the present divorce action. He asserts, nevertheless, that the court has equitable powers to grant relief from the automatic orders because of the exigencies of the situation. The automatic orders themselves contemplate that relief may be granted by the court in exceptional situations. Section 11 (b) of the orders states in relevant part: "If you object to or seek modification of these orders during the pendency of the action, you have the right to a hearing before a judge within a reasonable time." The defendant asserts that his situation is the very sort that merits a modification of the automatic orders.

Practice Book § 25-5 sets forth the provisions for automatic orders in a dissolution of marriage action. The official commentary for Practice Book § 25-5 states that the purpose of the rule is "to assist families in transition in maintaining, to the greatest extent possible, the status quo at the commencement of an action for dissolution of marriage." Connecticut Law Journal, Volume 58, No. 46, May 13, 1997, p. 93PB. The freezing of assets, as provided by the first automatic order, should

effectively allow for current family support, while preserving assets, avoiding waste and preventing fraud.

The courts have typically interpreted the ban on alienation of assets to allow two court-ordered exceptions to the rule. The first exception is conversion of an asset to another form. In *Acquarulo* v. *Acquarulo*, Superior Court, judicial district of New Haven, Docket No. FA98 0420132S (November 10, 1999) (*Jones, J.*), the court described its earlier action allowing the liquidation of certain assets, which were then to be held in trust pending further disposition by the court. Another example might be the ordering of the sale of a house pendente lite, despite the objection of a party, to preserve the value of the equity when the property is facing foreclosure and has a willing buyer for full market value. The cash realized from the equity in the house would then be held aside pending final allocation by the court. A further example is the use of an insurance check for property damage in an auto accident to purchase a replacement vehicle. The vehicle is then available for allocation at the time of the final divorce.

The second court-ordered exception is the allocation of the temporary possession of personal property. While not allowing the sale or transfer of a motor vehicle or computer pendente lite, a court might, nevertheless, allocate the exclusive use of such an item to one party during the pendency of the litigation. General Statutes § 46b-83 allows courts to order exclusive use of the family home pendente lite. Courts have extrapolated from that statute the authority to award the use of other tangible items while a case is pending. The defendant's proposed disposition of $100,000 in the present case does not fall within the ambit of either of the recognized exceptions to the rule. The defendant will not be converting the moneys into another form for later disposition. He intends to spend it for legal services in his criminal matter. Similarly, the expenditure of cash for

these legal services cannot be characterized as the mere exclusive use of an asset; it would be an irrevocable disposition of that asset.

The defendant argues that, given the twenty-three year length of the marriage, the substantial size of the marital estate, and the fact that the defendant contributed at least as much as the plaintiff to the acquisition of the assets, the chances are slim that the court would allocate every penny of the assets to the plaintiff in the divorce. By making a partial award of assets now, the court would, therefore, merely be granting the defendant an advance on his ultimate share of the marital distribution.

The defendant's evidence at the October 21, 2002 hearing was limited to a description of the assets of each party and the financial contributions of each party to the acquisition of those assets. General Statutes § 46b-81 sets forth the criteria that must be considered by the court to allocate property in a dissolution of marriage action. Section 46b-81 provides in pertinent part: "(a) At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . . (c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." In the present case, the court has not heard any evidence relating to most of the criteria in the statute. "The trial court must

consider all the statutory criteria in determining how to divide the parties' property in a dissolution action. Therefore, in addition to the financial contributions of each party, the court must properly consider the causes of the dissolution, the age, health, station, occupation, amount and sources of income, vocational skills, employability, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income." *Lopiano* v. *Lopiano*, 247 Conn. 356, 374–75, 752 A.2d 1000 (1998).

"[T]he purpose of property division is to unscramble the ownership of property, giving to each spouse what is equitably his." (Internal quotation marks omitted.) *Rubin* v. *Rubin*, 204 Conn. 224, 228, 527 A.2d 1184 (1987). Lacking evidence necessary to consider all the statutory criteria, the court cannot make a well considered allocation of the assets of the parties. As permitted in the enabling statute, the possibility remains that *all* the assets of the parties could be allocated to the plaintiff. While that possibility seems remote, given the size of the estate in this matter, the court does not have the information at hand to predetermine the issue.

Even if the defendant had been able to offer evidence at the October 21, 2002 hearing covering all the criteria in § 46b-81, the court should be cautious about imposing a division of assets pendente lite. Section 46b-81 (a) explicitly restricts the court to such action "[a]t the time of entering a decree . . . ." "[T]he parties' assets are to be valued as of the date of dissolution." *Zern* v. *Zern*, 15 Conn. App. 292, 296, 544 A.2d 244 (1988). "According to our long-standing principles of statutory construction, our fundamental objective is to ascertain and give effect to the intent of the legislature." *Smith* v. *Smith*, 249 Conn. 265, 272, 752 A.2d 1023 (1999). The court is bound by limitations deliberately imposed by the legislature.

The defendant's motion for relief from the automatic orders is denied. The court understands that this denial of relief means that the defendant lacks the financial ability at this time to secure and pay for competent legal representation in his pending criminal matter. At the time of this hearing, the defendant had not yet applied for the services of a public defender. A determination of his eligibility for such services will be made by the judge handling that case, if and when, the defendant makes an application for public defender services. The return date for the present case was September 3, 2002. The matter is set down for trial on December 17 and 18, 2002.